J-E02003-17

2018 PA Super 261

| | | |
|---|---|---|
| JOHN M. GREGURY AND BARBARA J. ROBEY | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1467 MDA 2015 |
| SHIRLEY M. GREGURAS AND ESTATE OF ADOLF GREGURAS, AND JAMES T. YINGST AND GUTHRIE, NONEMAKER, YINGST & HART | : | |

Appeal from the Judgment Entered August 17, 2015
In the Court of Common Pleas of York County Civil Division at No(s):
2009-SU-003228-01

BEFORE: GANTMAN, P.J., BENDER, P.J.E., BOWES, J., SHOGAN, J.,
LAZARUS, J., OLSON, J., OTT, J., STABILE, J., and DUBOW, J.

OPINION BY BOWES, J.: **FILED SEPTEMBER 20, 2018**

Appellants John M. Gregury and Barbara J. Robey appeal from the August 17, 2015 judgment entered after the trial court granted a nonsuit in favor of Appellees Shirley M. Greguras ("Shirley"), individually and as Executrix of the Estate of Adolf Greguras ("Decedent"), James T. Yingst, Esquire, and Guthrie, Nonemaker, Yingst & Hart ("Law Firm"). At issue herein is a question of first impression regarding the timing of the waiver of the attorney-client privilege. After thorough review, we reverse the order granting a nonsuit, and remand for further proceedings consistent with this opinion.

Decedent died on May 27, 2007. He was survived by his second wife of thirty-five years, Shirley, and two adult children from his first marriage, Appellants John Gregury and Barbara Robey. He also had a stepdaughter, Sharon Beavers, Shirley's daughter from a prior marriage.

Decedent's Will dated March 2, 2000, which was prepared by Attorney Yingst of the Appellee Law Firm, was admitted to probate. By its terms, Shirley was designated Executrix of Decedent's estate. Decedent's Will provided in pertinent part:

SECOND: I give all of my property, real, personal and mixed, of whatsoever kind and wherever situate, as follows:

A. One-half (1/2) to my wife, Shirley M. Greguras. Should my said wife predecease me, her share of my said property shall be distributed equally to my two (2) children, Barbara J. Robey and John M. Gregury, and my wife's daughter, Sharon L. Beavers.

B. One-fourth (1/4) to my daughter, Barbara J. Robey. Should my said daughter predecease me, her share of my said property shall be distributed equally to my son, John M. Gregury, and my wife's daughter, Sharon L. Beavers.

C. One-fourth (1/4) to my son, John M. Gregury. Should my said son predecease me, his share of my said property shall be distributed equally to my daughter, Barbara J. Robey, and my wife's daughter, Sharon L. Beavers.

Will of Adolph Greguras ("Will"), 3/2/00, at 1.

As of Decedent's death, Decedent and Shirley had $330,000 in jointly-held accounts, consisting of a joint checking account with a balance of $113,423.26, and two jointly-held certificates of deposit opened in 2004, each

with a balance of $111,466.79. **See** Plaintiffs' Exhibit 7; N.T. Jury Trial, 3/16-18/15, at 78. Other estate assets include two jointly-held certificates of deposit at M&T Bank, with values at Decedent's death of $14,747.53 and $19,352.98. **See** Plaintiffs' Exhibit 8. Based on the Pennsylvania Multiple-Party Accounts Act ("MPAA"), sums remaining in joint accounts upon death of a party to the account are presumed to belong to the survivor, unless there is clear and convincing evidence of a different intent at the time the account is created. Since the majority of Decedent's assets were jointly held with Shirley, Appellants stood to inherit nothing from Decedent's estate except some of his personal effects and household items.[1]

Appellants commenced this action against Shirley, Attorney Yingst, and the Law Firm seeking recourse for the failure of their legacy.[2] Their amended complaint alleged fraud, breach of contract, professional negligence,

---

[1] The marital home was not part of Decedent's estate. By deed dated October 25, 1983, Decedent and Shirley conveyed a one-half undivided interest in the marital home to themselves as tenants by the entireties, and an undivided one-quarter interest each to John and Barbara as joint tenants with a right of survivorship. Deed, 10/25/83. Thus, John and Barbara already owned an undivided one-half interest in that property long before Decedent died. Decedent's and Shirley's undivided one-half interest in the property passed to Shirley as the survivor upon his death. This property was the subject of a partition action following Decedent's death, but prior to partition, the property was sold and the proceeds distributed among the parties hereto.

[2] Pennsylvania recognizes a cause of action for intentional interference with expectation of inheritance. **See** Restatement (Second) of Torts § 870. In addition, an attorney is subject to liability to named legatees under a third party beneficiary theory for a failed legacy attributable to the attorney's malpractice. **Guy v. Liederbach**, 459 A.2d 744 (Pa. 1983).

intentional infliction of emotional distress, and sought, *inter alia*, imposition of a constructive trust, accounting, attorney fees, and punitive damages. Preliminary objections were sustained to the professional negligence count and request for attorney fees.

The thrust of Appellants' claims is that, despite Decedent's clear intent to benefit them expressed in his Will, all assets were held in joint name with Shirley, and therefore passed to Shirley as the survivor. Appellants asserted alternative theories as to why their legacy failed. Either Attorney Yingst failed to advise Decedent and Shirley that jointly-held property, and specifically, joint bank accounts, would presumptively pass to the survivor upon the death of a party, and not under the Will; or, if he so advised them, Shirley used that knowledge to place all assets in joint name to avoid any assets passing under the Will. Appellants maintain that, "their father could not possibly have intended they receive '1/4 of nothing.'" Appellants' brief at 9.

Under either theory, evidence of what Decedent and Shirley disclosed to Attorney Yingst about their assets and how they were held, and what Attorney Yingst advised them about the disposition of jointly-held property upon death, was highly relevant. However, those same communications were subject to the attorney-client privilege, and Shirley invoked the privilege throughout the discovery process to shield those communications from Appellants.

Shirley and Attorney Yingst each moved for summary judgment, but the motions were denied on August 13, 2014.[3] In advance of trial, the Honorable Stephen P. Linebaugh ruled on motions *in limine* and objections to proposed trial exhibits. The court precluded Appellants from presenting certain oral testimony, ruling that it was inadmissible parol evidence offered to contradict the clear and unambiguous testamentary intent expressed in Decedent's Will. The court also ruled that certain handwritten documents purportedly authored by Decedent were inadmissible, concluding that they were unauthenticated, hearsay, and irrelevant. The court also precluded Appellants from offering John's medical records in support of his claim for intentional infliction of emotional distress without expert testimony.[4]

A jury trial commenced on March 16, 2015, before the Honorable David E. Grine. During opening statements, counsel for Attorney Yingst advised the jury that Shirley remembered what had been discussed with Attorney Yingst, and that she would testify regarding those communications. Furthermore, Attorney Yingst would testify that he advised Decedent and Shirley that joint accounts would pass outside the Will. Appellants objected and asserted that they were prejudiced by the late waiver of the privilege and the surprise

---

[3] The Honorable John W. Thompson, Jr. presided over the case through the denial of summary judgment.

[4] John Gregury made a claim for damages for emotional distress he sustained due to alleged misrepresentations made by Shirley and Attorney Yingst that Decedent had disowned him.

testimony. They moved for a mistrial, or in the alternative, that the testimony be excluded, or that trial be continued to permit them to depose Shirley and Attorney Yingst to ascertain the nature of their testimony. The court overruled the objection, denied the mistrial, and ignored the request to exclude the testimony or permit limited discovery. The trial proceeded, and at the conclusion of Appellants' case-in-chief, the court granted a nonsuit upon motion of Appellees.

Appellants timely filed post-trial motions, which the trial court denied. A divided panel of this Court vacated the judgment, reversed the order granting Appellees' motion for nonsuit, and remanded the case for further proceedings. We granted *en banc* review to consider the following issues, which we have re-ordered for ease of disposition:

1. Did the trial court err in allowing [Shirley] to waive [the] attorney[-]client privilege at trial after asserting it throughout discovery and pre-trial processes?

2. Did the trial court err in denying reconsideration of the in limine and trial exhibit orders as to evidence of testamentary intent?

3. Did the trial court err in denying reconsideration of the in limine and trial exhibit orders regarding severe emotional distress of [Appellant] John Gregury?

4. Did the trial court err in granting [Appellees'] motion for nonsuit as to all counts and all [Appellees], where the motions merely sought to relitigate legal issues rejected in the summary judgment?

Substituted brief of Appellants at 3 (unnecessary capitalization omitted).

This is an appeal from an order granting a motion for compulsory nonsuit.

> A motion for compulsory non-suit allows a defendant to test the sufficiency of a plaintiff's evidence and may be entered only in cases where it is clear that the plaintiff has not established a cause of action; in making this determination, the plaintiff must be given the benefit of all reasonable inferences arising from the evidence. When so viewed, a non-suit is properly entered if the plaintiff has not introduced sufficient evidence to establish the necessary elements to maintain a cause of action; it is the duty of the trial court to make this determination prior to the submission of the case to the jury.

*Parker v. Freilich*, 803 A.2d 738, 744-45 (Pa.Super. 2002). "When we review the grant of a non-suit, we must resolve all conflicts in the evidence in favor of the party against whom the non-suit was entered. A compulsory non-suit is proper only where the facts and circumstances compel the conclusion that the defendants are not liable upon the cause of action pleaded by the plaintiff." *Brodowski v. Ryave*, 885 A.2d 1045, 1060 (Pa.Super. 2005) (quoting *Shay v. Flight C Helicopter Servs.*, 822 A.2d 1, 13 (Pa.Super. 2003)).

Appellants contend that the trial court erred in failing to either grant a mistrial or allow time to conduct additional discovery when Shirley waived the attorney-client privilege at trial, after previously asserting it throughout discovery. They stress the fundamental unfairness of permitting the attorney-client privilege to be used as a shield to evade discovery, and as a sword to facilitate trial by ambush. Appellants rely upon the Supreme Court's recent decision in *In re Thirty-Third Statewide Investigating Grand Jury*, 86

A.3d 204, 216-17 (Pa. 2014), reiterating that the purpose of the privilege is to "foster candid communications between counsel and client" for the benefit of "the systematic administration of justice." What occurred herein, according to Appellants, undermined discovery and created "minefields of uncertainty in the examination of witnesses at trial." Substituted Brief of Appellants at 29.

Appellants compare the prejudice herein to the situation where an expert report is amended right before trial or expert testimony exceeds the scope of the report. In each case, we have recognized there is unfair surprise to an adversary. Appellants contend that, by permitting the late waiver of the attorney-client privilege and failing to accommodate their request for additional discovery, they "were left with 'a lady or the tiger' dilemma: opening the door and asking questions for which the answer was not known; or having the witnesses testify without any record to contain their testimony.

Shirley and Attorney Yingst accuse Appellants of seeking a "rule that would permanently bind a party" to an initial assertion of attorney-client privilege. Shirley asserts that Appellants should have filed a motion *in limine* prior to trial to obtain a ruling on the privilege, and having failed to do so, she maintains they cannot claim unfair surprise. Similarly, Attorney Yingst faults Appellants for not filing a motion to compel discovery of the communications as to which the privilege was asserted. Finally, Shirley attributes Appellants' predicament to a "tactical decision" to permanently bind Shirley to her initial

assertion of the privilege, without "actually apply[ing] the fetters." Substituted brief of Shirley Greguras at 19.

The record reveals the following. Appellants served interrogatories and requests for production of documents upon Appellees. They also deposed Shirley and Attorney Yingst. Throughout the discovery process, Attorney Yingst refused to answer questions calculated to elicit what information Decedent and Shirley told him, and what he advised them, citing Shirley's invocation of the attorney-client privilege. The only exception he made was for discussions he had with Shirley after Decedent's death, when her daughter Sharon was present, which is in accordance with the law. ***See Commonwealth v. Small***, 980 A.2d 549, 562 (Pa. 2009) (reiterating that that the presence of third parties during confidential communications generally negates the confidential nature of the communications). Shirley declined to answer similar questions based on the assertion of the privilege. Throughout the discovery process, Appellants argued that the assertion of the privilege was selective and inconsistent, and therefore waived, but they never formally challenged its application. As trial commenced on March 16, 2015, the attorney-client privilege applied.

In opening statements, counsel for Appellants told the jury that Appellees had exercised the attorney-client privilege selectively in their depositions, choosing to disclose certain communications while refusing to

divulge others. He further advised the jury, without objection, that it could consider that inconsistency in assessing the credibility of the witnesses.

Counsel for Attorney Yingst did not mention the words "attorney-client privilege" in his opening statement, although he implicitly announced its waiver. He told the jury the following. Shirley recalled the meeting with Attorney Yingst, and she would testify about what transpired. Shirley would also testify that she and Decedent were going to take care of each other, and, in the event that they both died at the same time, "it would just spill down to their children, plain and simple." N.T. Jury Trial, 3/16-18/15, at 52. In addition, Attorney Yingst would testify that Decedent and Shirley described their assets, and that they understood that jointly-held assets, such as joint bank accounts, "anything that you are both owners on, they don't come inside the will." *Id*.

At the conclusion of opening statements and outside the presence of the jury, Appellants moved for a mistrial. Appellants objected to Appellees' plan to introduce the attorney-client communications that they had previously refused to disclose during discovery into evidence. They maintained that waiver was inconsistent with the prior assertion of the attorney-client privilege, and that a mistrial was warranted. In the alternative, counsel for Appellants asked the court to rule that Shirley and Attorney Yingst were not permitted to testify at trial regarding matters that they had previously refused to disclose based on privilege during their depositions.

Counsel for Attorney Yingst countered that, "clearly what was said in argument does not constitute grounds for a mistrial" as it is not evidence.[5] *Id*. at 64. Attorney Yingst's counsel charged further that Appellants knew of the assertion of the attorney-client privilege and could have filed a motion *in limine* to preclude such evidence. Appellees maintained that, having failed to seek such a ruling pre-emptively, Appellants could not now complain. *Id*. at 64-65. Counsel for Attorney Yingst also stated that Shirley was present and would be happy to advise the Court that the privilege had been waived, a representation her lawyer confirmed.

Counsel for Appellants countered:

> Your Honor, I will note that not only did they not inform me prior to trial that they were going to change their position regarding waiver but they had previously argued when I had raised the argument that there had been a waiver because she had testified to communications they argued that she could not waive the privilege of [Decedent] Adolf Greguras. That was their argument.
>
> And, Your Honor, I can't be expected to file a motion in limine regarding attorney/client privilege that has been asserted when they don't tell me that they've changed their mind about attorney/client privilege prior to trial, . . .

---

[5] The trial court is vested with discretion to grant a mistrial whenever prejudicial conduct or remarks deprive a party of a fair and impartial trial. **See Commonwealth v. Culver**, 51 A.3d 866, 872 (Pa.Super. 2012) (affirming grant of mistrial where prosecutor persisted in improper conduct during both opening statement and closing argument); **see also Ferguson v. Morton**, 84 A.3d 715, 722 (Pa.Super. 2013) (recognizing that mistrial based on plaintiff's improper closing argument could be affirmed if prejudice resulted).

- 11 -

*Id*. at 65. At that point, Appellants' counsel argued that, at "the very least[,] trial should be adjourned and I should be permitted to depose both [Shirley and Attorney Yingst] now that they want to waive the attorney/client privilege because trial is not supposed to be by ambush." *Id*. at 65.

The court denied the request for a mistrial, stating it was satisfied that its previous instruction that statements of counsel are not evidence sufficed. *Id*. at 67. The trial court ignored Appellants' request that the testimony be precluded, or that they should be permitted to depose Attorney Yingst and Shirley to glean what their responses would be to questions that they had previously refused to answer. Trial proceeded. Appellants called Shirley and Attorney Yingst as on cross-examination, but did not venture into the unknown realm of the attorney-client confidences. Counsel for Appellees reserved the right to conduct the direct examinations of Shirley and Attorney Yingst during their case-in-chief. Thus, the substance of the attorney-client communications was not discussed or explored during Appellants' case.

Appellees contend first that Shirley was permitted by statute to waive the privilege at trial, and that Appellants did not demonstrate prejudice. They argue further that, since Appellants do not point to any specific testimony at trial or deposition for which the privilege previously was asserted, this issue is waived on appeal. They attempt to distinguish cases from other jurisdictions where the late waiver of the attorney-client privilege was held to be prejudicial.

We find no merit in Appellees' waiver argument. Appellants repeatedly sought discovery regarding the nature of attorney-client communications, and, in each instance, Appellees asserted the privilege as the basis for not disclosing those confidences. Appellants contend that they were afraid to cross-examine Shirley and Attorney Yingst about those attorney-client communications without a record, and sound trial tactics would support that reluctance.

At issue is the propriety of permitting a litigant to assert the attorney-client privilege to shield confidential communications from disclosure during the discovery process, only to voluntarily waive the privilege at trial and introduce those communications for her own purposes. The attorney-client privilege is codified at 42 Pa.C.S. § 5928, and provides,

> In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

42 Pa.C.S. § 5928.

As Shirley maintains, the statutory language does not preclude the waiver of the attorney-client privilege "upon the trial by the client." Nor does it mean that the privilege can **only** be waived at trial, although it is capable of that construction. The language also means that counsel cannot testify unless the privilege was waived prior to trial, perhaps during the course of discovery. However, even if the language is construed as countenancing

waiver of the attorney-client privilege at trial, that is not dispositive of the issue. The propriety of the timing of the waiver must be viewed in the context of our discovery and pretrial rules. An eleventh-hour waiver has considerable potential to create unfair surprise and prejudice to the other party, and it is the role of the trial court to prevent it by reasonable means.

In this Commonwealth, we adhere to rules that require parties to lawsuits to engage in reasonable discovery. Discovery may be sought as to "any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party," and includes inquiries regarding "the existence and location of documents or other tangible objects and the identities of persons with knowledge of any discoverable matter." Pa.R.C.P. 4003.1(a). Hence, the issue of privilege, and its assertion or waiver, usually arises at the discovery stage. Attorney-client communications are protected from discovery if the privilege is claimed. If, however, no privilege is asserted or confidential communications are disclosed, the privilege is waived.

One of the primary purposes of discovery is to prevent the surprise and unfairness of a trial by ambush, in favor of a trial on the merits. Parties may discover the evidence that will be offered at trial, and assess the credibility of witnesses. Consequently, discovery is calculated to facilitate early settlement or narrow issues for trial.

Although the propriety of a voluntary last-minute waiver of the previously invoked attorney-client privilege appears to be a question of first impression in this Commonwealth, our courts have taken a dim view of the manipulation of privilege in other circumstances. For instance, claims of selective disclosure, if valid, may result in waiver of the privilege with respect to other evidence regarding the same subject matter. *See Salsman v. Brown*, 51 A.3d 892, 895 n.3 (Pa.Super. 2012) (citing *Nationwide Mut. Ins. Co. v. Fleming*, 924 A.2d 1259, 1262-63 (Pa.Super. 2007)) (acknowledging subject matter waiver where a party uses the attorney-client privilege as "both a sword and a shield" by selectively disclosing privileged documents that were favorable, and withholding unfavorable documents on the same subject, but declining to find it because documents disclosed were not privileged).

The consequences of the last minute waiver of a previously-invoked Fifth Amendment privilege in a civil case was the issue in *Haas v. Bowman*, 62 Pa. D. & C.4th 1, 15 (Allegheny Co. 2003). The Honorable R. Stanton Wettick held that where a party properly asserted the privilege, but subsequently decided to waive it on the eve of trial, the party was precluded from offering testimony on matters for which the privilege had been invoked due to the unfair tactical advantage to that party. In arriving at his ruling, Judge Wettick referenced decisions in other jurisdictions finding the practice unacceptable. *See United States v. 4003-4005 Fifth Avenue,* 55 F.3d 78, 85-86 (2d Cir. 1995) (affirming district court's finding that witness abused and manipulated

privilege by selectively asserting it throughout, but seeking to waive it on eve of trial); ***SEC v. Graystone Nash Inc.***,25 F.3d 187, 191-92 (3d Cir. 1994) (recognizing belated waiver of Fifth Amendment privilege caused unfair disadvantage to opposing party who had conducted discovery, prepared his case without the benefit of knowledge of the contents of the privileged information, and who may have lost the opportunity to refute it); ***Gutierrez-Rodriguez v. Cartagena***, 882 F.2d 553 (1st Cir. 1989) (affirming order barring witness from testifying at trial due to his assertion of Fifth Amendment privilege to refuse to testify during discovery); ***Dunkin' Donuts Inc. v. Taseski****,* 47 F. Supp.2d 867, 872-73 (E.D. Mich. 1999) (holding when Fifth Amendment privilege claimed, litigant is barred from introducing other evidence on that issue).

The last-minute waiver of privilege was discussed in the context of the physician-patient privilege in a medical malpractice case in ***Domako v. Rowe***, 475 N.W.2d 30, 33 (Mich. 1991). The Supreme Court of Michigan discussed the statute providing that, "if a party asserts the physician-patient privilege regarding medical information, that party may not thereafter present any evidence relating to the party's medical or physical condition." MCR 2.314(B)(2). The court recognized that the rationale for the statute was that it was "patently unfair for a party to assert [physician-patient] privilege during pretrial proceedings, frustrate rightful discovery by the other party, and then voluntarily waive that privilege at trial, thereby catching the opposing party

unprepared." *Id*. The court reaffirmed that the purpose of the physician-patient privilege was "to protect the confidential nature of the physician-patient relationship and to encourage the patient to make a full disclosure of symptoms and conditions." *Id*. at 33 (citations omitted). Waiver, on the other hand, was intended "to prevent the suppression of evidence." *Id*. The *Domako* Court concluded that:

> An attempt to use the privilege to control the timing of the release of information exceeds the purpose of the privilege and begins to erode the purpose of waiver by repressing evidence. Both consequences are anathema to the open discovery policy of our state. The statute and the court rule both allow waiver, thus striking an appropriate balance between encouraging confident disclosure to one's physician and providing full access to relevant evidence should a charge of malpractice follow treatment.

*Id*. at 33.

The voluntary eleventh-hour waiver of the attorney-client privilege was at issue in *Seattle Northwest Sec. Corp. v. Sdg Holding Co*., 812 P.2d 488 (Wash.App. 1991). The Washington appellate court acknowledged that its civil rules did not require a party to elect whether it would offer testimony in order to avoid waiving the attorney-client privilege. However, since the rules were intended, at least in part, "to avoid 'trial by ambush' and to require that parties cooperate by not frustrating the purposes of discovery[,]" the court noted that "[a]llowing a party to sit on the fence and not specify whether a potential witness will testify in order to preserve the advantages of not testifying while enjoying the future possibility of allowing that testimony frustrates the other party's attempt to construct an adequate case." *Id*. at

499. Hence, that court extended the rule to require the party asserting the attorney-client privilege, upon remand, to "make an election prior to any deadline for the completion of discovery as to whether or not the privilege will be voluntarily waived at trial." *Id*. "[I]f the privilege is to be waived," that party must "provide to opposing counsel a statement of the subject matter of the testimony." *Id*.

The same concern for fundamental fairness prompted a federal district court in Florida to hold that if a party "intends to waive the [attorney-client] privilege at trial by the introduction of evidence within that privilege, then the [party] will be required to allow discovery with regard to matters material to that testimony." *Int'l Tel. & Tel. Corp. v. United Tel. Co. of Florida*, 60 F.R.D. 177, 186 (M.D. Fla. 1973). The court further cautioned that the party's refusal to permit discovery of confidential matter would preclude it from introducing it at trial.

Herein, the trial court failed to appreciate the prejudice to Appellants from Shirley's last-minute waiver of the privilege. If it had, we believe it could have alleviated the prejudice without declaring a mistrial. The trial court could have precluded Appellees from introducing at trial the communications that were the subject of the earlier exercise of the privilege, or alternatively, briefly halted the proceedings to permit limited discovery of Shirley and Attorney Yingst. The trial court's failure to acknowledge the unfair surprise and remedy its prejudicial impact upon Appellants' trial strategy, their ability to effectively

cross-examine Appellees, and the testimony of Appellants' expert, requires a new trial.

We agree with Appellants that the prejudice herein is much like the situation where discovery violations result in unfair surprise and prejudice to the opposing party. Pennsylvania Rule of Civil Procedure 4003.5 requires parties to timely submit their expert reports, and confines the expert's testimony to the scope of those reports, to avoid unfair surprise. **See Woodard v. Chatterjee**, 827 A.2d 433, 445 (Pa.Super. 2003) (citing comment to Rule 4003.5(c) for proposition that the rule is intended "to prevent incomplete or 'fudging' of reports which would fail to reveal fully the facts and opinions of the expert or his grounds therefor"); **see also Jones v. Constantino**, 631 A.2d 1289, 1294 (Pa.Super. 1993) (noting the fair scope rule "disfavors unfair and prejudicial surprise"). In such situations, trial courts may exclude the offending testimony entirely or, in some cases permit the opposing party to depose the witness during trial.

Furthermore, the waiver of the attorney-client privilege at trial potentially violates the duty of a party to timely supplement discovery responses if it becomes aware of subsequent facts or circumstances that make prior answers incorrect. **See** Pa.R.C.P. 4007.4. Failure to timely supplement may result in the exclusion of that previously-undisclosed subject matter. **Id**.; **see also** Pa.R.C.P. 4019(i) (precluding a witness whose identity was not revealed as provided from testifying at trial on behalf of the defaulting party).

The common thread running through these rules and cases is that one party should not be permitted to withhold information from the other party and then surprise that party with it at trial. Implicit is the awareness that a lack of notice deprives the other party of the opportunity to plan his trial strategy. The fact that the instant case involves privileged communications, rather than rule-mandated disclosures, does not warrant different treatment. Herein, the trial court should have either excluded the testimony that was the subject of the privilege or, at the very least, permitted Appellants to depose Appellees to discover the substance of the undisclosed communications.

Nor can the trial court's abuse of discretion be deemed harmless as the full impact of the last-minute waiver cannot be measured. The revelation in Appellees' opening statements that the privilege was waived completely altered the landscape of the case. Based on the prior assertion of the privilege, Appellants anticipated no direct evidence from either Attorney Yingst or Shirley regarding their discussions. Without the benefit of discovery, they were not prepared to challenge Appellees' credibility and ability to recall discussions that had occurred fifteen years before. If Appellants had ventured into the substance of the heretofore forbidden attorney-client communications, they would have been proceeding blindly without any knowledge of what the witnesses would say or any ready means to challenge it.

In addition, the anticipated revelation of the contents of the communications blindsided Appellants' legal expert, Bruce Warshawsky, Esquire, on cross-examination at trial. His testimony was limited to the scope of his expert report, which was based upon his review of documents and the deposition testimony. Although Attorney Yingst refused to testify in deposition regarding his specific advice to Decedent and Shirley based on the attorney-client privilege, counsel for Attorney Yingst vigorously cross-examined Attorney Warshawsky about the effect on his opinion if, hypothetically, the attorney had testified or were to testify that he explained the difference between probate and non-probate assets to Decedent and Shirley. N.T. Jury Trial, 3/16-18/15, at 537. Counsel for Attorney Yingst was permitted to ask the witness, "So if [Attorney Yingst] testified that he explained the difference between joint and non-joint assets, what's the fault?" *Id*. at 549. Appellants' counsel objected that the questions created the false impression that Attorney Yingst had testified that he told Decedent and Shirley about jointly-held assets when he had instead asserted the privilege to refuse to divulge the contents of the discussion, and renewed his objection to the late waiver of the attorney-client privilege. *Id*. at 550. Furthermore, the cross-examination implied that the expert's opinion would change when Attorney Yingst testified as to the facts. ("So if Mr. Yingst testifies that [he discussed with Shirley and [Decedent] the fact that all of their assets were held jointly and that

[Decedent]'s will did not bequeath any of that property to Appellants], . . . that would change your opinion?") *Id*. at 556-57.

Moreover, we reject Appellees' contention that Appellants should have filed a motion *in limine* to obtain a ruling on the privilege, or be precluded from complaining when Shirley waived it at trial. A motion *in limine* is an optional tool available to the parties to obtain pretrial rulings on the admissibility or inadmissibility of certain evidence. A pretrial ruling on such a motion can provide some certainty as to what evidence will be admitted or precluded, and therefore assist in strategy decisions and provide parameters for counsel in opening statements. Motions *in limine* also permit the court to rule outside the presence of the jury, often with the benefit of supporting legal authority, and obviate the need to object at trial. By not filing such a motion, however, a party has not waived his right to object to evidence or to seek relief. Certainly, Appellants cannot be deemed to have waived any right to object at trial to evidence that, due to the invocation of the privilege, was not part of the case prior to trial.

Finally, countenancing what occurred herein would only encourage parties to use privilege, which is not favored, to flout the discovery rules in order to gain an unfair tactical advantage. On that basis alone, a new trial is required. In addition, however, we find merit in Appellants' claim that the trial court committed reversible error in precluding the admission of documentary evidence tending to show that Decedent did not understand that

his half of joint property would not devolve per the Will, from which one could reasonably infer that Attorney Yingst did not so advise him.[6]  Our analysis follows.

Throughout discovery, Shirley and Attorney Yingst refused to answer any questions about the discussions at their two meetings regarding the wills of Shirley and Decedent.  In support of their contention that Attorney Yingst did not ascertain what assets Decedent and Shirley possessed, how they were held, or explain that jointly-held property would pass outside the Will. Appellants pointed to the fact that, although Shirley testified at her deposition that the attorney took notes during their meeting, there were no notes in his file.  The attorney admitted that he did not use a form to ascertain the nature of the testators' assets.  Finally, Appellants offered expert legal opinion that, based upon the failed legacy, and a legal file that did not contain any information about the assets and how they were held, Attorney Yingst had breached his duty to advise Decedent that one-quarter of his jointly-held assets would not pass to each of Appellants.

In addition to the foregoing, Appellants proffered two handwritten documents, purportedly prepared by Decedent, one listing his various

_____

[6] Appellants maintained throughout that Decedent's testamentary intent to benefit them was clear from his Will, and that oral testimony and documents were not offered to vary the terms of the Will.  Appellants contend that their legacy failed either because Attorney Yingst breached his contractual duty to effectuate Decedent's testamentary intent or because Shirley manipulated the joint accounts to frustrate Decedent's intent.

accounts and their balances, the other listing assets and a handwritten calculation of one-half of each asset. Appellants maintained that Decedent's calculation of a one-half interest indicated that he did not understand that the surviving joint owner, herein Shirley, would presumptively be entitled to all of the funds. Appellees objected to the admission of the documents as unauthenticated hearsay improperly offered to vary Decedent's intent as expressed in the Will. A judge ruled just prior to trial that they were inadmissible on authentication grounds. When Appellants subsequently asked the trial court to consider additional proof of authentication, the court denied them that opportunity, finding that the documents also constituted inadmissible hearsay and were irrelevant.

Our standard of review of a trial court evidentiary ruling is as follows:

When we review a trial court ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of the law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

*Stapas v. Giant Eagle, Inc.*, 153 A.3d 353, 367-68 (Pa.Super. 2016) (quoting *Stumpf v. Nye*, 950 A.2d 1032, 1035-36 (Pa.Super. 2008)).

Implicated herein are issues of authentication, hearsay, and relevancy, which we will address in turn. Authentication is codified in Pennsylvania Rule

of Evidence 901, and provides in pertinent part that, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Pa.R.E. 901(a). That Rule also provides that the testimony of a witness with personal knowledge that a matter is what it is claimed to be may be sufficient to authenticate or identify the evidence. Pa.R.E. 901(b)(1); *id*. at Comment (citing **Commonwealth v. Hudson**, 414 A.2d 1381 (Pa. 1980)); **Commonwealth v. Koch**, 39 A.3d 996 (Pa.Super. 2011) *affirmed by an equally divided Supreme Court*, 106 A.3d 705 (Pa. 2014); **In the Interest of F.P.**, 878 A.2d 91, 93-94 (Pa.Super. 2005).

A document may be authenticated by direct proof and/or by circumstantial evidence. **Commonwealth v. Brooks**, 508 A.2d 316, 318 (Pa.Super. 1986). "Proof of any circumstances which will support a finding that the writing is genuine will suffice to authenticate the writing." **Id**. at 319 (quoting McCormick, Evidence § 222 (E. Cleary 2d Ed. 1972)).

Where there is a question as to any writing, "the opinion of any person acquainted with the handwriting of the supposed writer" is relevant for that purpose. 42 Pa.C.S. § 6111(1). Rule 901(b) provides that "[a] non[-]expert's opinion that handwriting is genuine, based on a familiarity with it that was not acquired for the current litigation," is competent evidence.

In addition, circumstantial evidence may be sufficient to authenticate a document. **See** McCormick, Evidence, **supra** at §§ 219-21 (discussing

circumstantial evidence and cases cited therein); *see e.g.*, *Commonwealth v. Nolly*, 138 A. 836 (Pa. 1927) (letters authenticated by contents known only to sender and recipient); *Commonwealth v. Bassi*, 130 A. 311 (Pa. 1925) (finding unsigned letter authenticated by defendant's nickname written on it, along with contents indicating knowledge of matters familiar to both defendant-sender and witness-recipient).

A proponent of a document need only present a *prima facie* case of some evidence of genuineness in order to put the issue of authenticity before the factfinder. *Nolly*, *supra* at 837. The trial court makes the preliminary determination of whether or not a *prima facie* case exists to warrant its submission to the finder of fact. *Brenner v. Lesher*, 2 A.2d 731, 733 (Pa. 1938). If that threshold is met, the jury itself considers the evidence and weighs it against that offered by the opposing party. *Id*.

The trial court precluded the documentary evidence on the ground that it could not be authenticated. We disagree. The record demonstrates that although the proffered documents were undated and unsigned, John Gregury testified in his deposition that he was familiar with Decedent's handwriting and that the writing on the documents was Decedent's. He also testified that the stationery was the type used by Decedent. John's familiarity with Decedent's handwriting was sufficient to make out a *prima facie* case of authentication.

In addition, there was circumstantial evidence tending to authenticate the documents. The writing consisted of a list of accounts and assets owned

by Decedent and Shirley, together with their balances at a point in time that could have been pinpointed with reference to financial records, and which depicted the calculation of the value of one-half of those assets.[7] The contents of the writing likely were known only to Decedent and Shirley. Based on the foregoing, we find both direct and circumstantial evidence sufficient to establish a *prima facie* case for authentication of the documents. Thus, any dispute as to their authenticity was for the jury.

The trial court also dismissed Appellants' proffer of the documents on the ground that they constituted inadmissible hearsay. Pennsylvania Rule of Evidence 802 provides that "Hearsay is not admissible except as provided by these rules, by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Pa.R.E. 801(c). A "statement," is an oral or written assertion. Pa.R.E. 801(a). A "declarant" is a person who makes a statement. Pa.R.E. 801(b). Any "out[-]of[-]court statement offered not for its truth but to explain the witness's course of conduct is not hearsay." **Commonwealth v. Rega**, 933 A.2d 997, 1017 (Pa. 2007) (citing

---

[7] We reject the trial court's finding that the documents were irrelevant because they were undated. As we concluded *supra* in our discussion of authentication, it was possible to ascertain when the documents were written by comparing the balances reported to bank statements.

*Commonwealth v. Sneed*, 526 A.2d 749, 754 (Pa. 1987)); *accord Commonwealth v. Busanet*, 54 A.3d 35, 68-69 (Pa. 2012); *Koch*, *supra*.

Appellants offered the documents to show that Decedent calculated the value of a one-half interest of his jointly-held assets, a computation that arguably had no meaning if Decedent knew or had been advised that the entire balance of the accounts would go to the survivor.  Hence, the documents were not offered for the truth of their contents, as the accuracy of the accounts listed and their balances was not germane, but for the fact of their creation.  Thus, the documents were not hearsay.[8]

Moreover, we find that the erroneous exclusion of the documents was not harmless error.  Appellants' legal expert, Attorney Warshawsky, relied upon the two documents in arriving at his opinion that Attorney Yingst failed to properly advise Decedent "that based on the status of his estate and his assets at the time that wills were drafted, that his intent would not be carried out."  N.T. Jury Trial, 3/16-18/15, at 529.  The exclusion of the documents substantially weakened that expert opinion.  In addition, the expert could not point to those documents on cross-examination as tending to undermine

_____

[8] Even if the documents were deemed to be hearsay, they fell within the exception for the declarant's then-existing mental state.  **See** Pa.R.E. 803(3).  Once it was demonstrated that Decedent was the author of the documents, their relevance lay in the fact that Decedent thought there was a reason to calculate the value of one-half of the joint assets.  Such evidence was probative on the issue whether Attorney Yingst advised Decedent and Shirley about jointly-held property.

Attorney Yingst's anticipated testimony that he fully explained jointly-held property to Decedent and Shirley. Since such evidence, if admitted, would have precluded the entry of a nonsuit, the error cannot be deemed harmless.

Appellants' third issue challenges the propriety of the court's pretrial ruling precluding them from introducing John's medical records, psychiatric evaluations, and the like, in support of his claim for intentional infliction of emotional distress. Appellants maintain that John's medical records were sufficient to show that he suffered extreme emotional distress as a result of Shirley's conduct. The trial court ruled that expert testimony was required to establish the existence of emotional distress and its cause. Since the issue could recur at the new trial, we will address it.

We find that the trial court correctly held that expert medical testimony was required to substantiate John's emotional distress claims. Our courts have long held that "Given the advanced state of medical science, it is unwise and unnecessary to permit recovery to be predicated on an inference based on the defendant's 'outrageousness' without expert medical confirmation that the plaintiff actually suffered the claimed distress." *Kazatsky v. King David Memorial Park*, 527 A.2d 988, 995 (Pa. 1987). Expert testimony is required "both as to fact of the distress itself and as to the causation element." *Wecht v. PG Publ. Co.*, 725 A.2d 788, 791 (Pa.Super. 1999). Medical records alone are insufficient for that purpose. Hence, the trial court properly excluded the proffered evidence.

In light of our remand for a new trial, Appellant's fourth issue regarding the trial court's entry of a nonsuit is moot. For all of the foregoing reasons, we vacate the judgment, reverse entry of nonsuit, remand to permit additional discovery from Attorney Yingst and Shirley regarding formerly confidential communications, and supplementation of expert reports, and a new trial.

Judgment vacated. Order reversed. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

President Judge Emeritus Bender, Judge Shogan, Judge Olson, and Judge Stabile join this opinion.

Judge Ott files a dissenting opinion in which President Judge Gantman, Judge Lazarus and Judge Dubow join.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/20/2018