J-A25017-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ROBERT UGEAN HARPER | : | No. 243 MDA 2020 |

Appeal from the Order Entered February 6, 2020
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s):  CP-21-CR-0001483-2019

BEFORE:  BOWES, J., OLSON, J., and KING, J.

CONCURRING AND DISSENTING MEMORANDUM BY BOWES, J.:

**FILED MARCH 01, 2021**

While I concur in the learned Majority's holding under Pa.R.E. 404(b), I respectfully dissent to the extent that the Majority affirms the trial court's conclusion that the text messages found on the phone of Clinton Arnold (the "decedent") were not authenticated under Pa.R.E. 901.  In my view, the Commonwealth adduced sufficient evidence to support authentication.  Accordingly, I would reverse that portion of the trial court's order and permit the admission of these text messages at Robert Ugean Harper's trial.

The Majority has correctly recited our "narrow" standard of review over the trial court's evidentiary rulings, pursuant to which "we may reverse only upon a showing of abuse of discretion or error of law."  ***Zuk v. Zuk***, 55 A.3d 102, 112 (Pa.Super. 2012).  Despite the deferential nature of our review, I believe that both the trial court and the Majority have taken too exacting of a

view of the authentication standard under Pa.R.E. 901(a), which, in pertinent part, provides as follows: "[T]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Under our rules, "[e]vidence that cannot be authenticated by a knowledgeable person, pursuant to [Pa.R.E. 901(b)(1)], may be authenticated by other parts of subsection (b), including circumstantial evidence[.]" **Commonwealth v. Talley**, 236 A.3d 42, 59 (Pa.Super. 2020).

As a general matter, "[a]uthentication entails a relatively low burden of proof; in the words of Rule 901 itself, simply 'evidence sufficient to support a finding that the item is what the proponent claims.'" **Commonwealth v. Murray**, 174 A.3d 1147, 1157 (Pa.Super. 2017). "Proof of **any circumstances** which will support a finding that the writing is genuine will suffice to authenticate the writing. . . . A proponent of a document need only present a *prima facie* case of some evidence of genuineness in order to put the issue of authenticity before the factfinder." **Gregury v. Greguras**, 196 A.3d 619, 633 (Pa.Super. 2018) (*en banc*) (emphasis added).

The specific communications implicated by Harper's motion *in limine* are a series of text messages that began on the morning of March 6, 2017, and concluded in the early morning hours of March 7, 2017. Specifically, these exchanges took place between the decedent's telephone and another unique telephone number. On its face, this conversation nominally documented preparations concerning a monetary transaction for "hard" and "dog food,"

slang for crack cocaine and heroin, respectively. *See* Commonwealth's Exhibit 2 at 1-5; *see also* N.T. Preliminary Hearing, 5/29/19, at 39.

These communiques provide a clear snapshot of events: (1) the decedent contacted his seller early in the day on March 6, 2017, and requested a meet-up; (2) the decedent was located in Perry County, but averred that he would be able to get a ride later that evening; (3) the decedent's ride showed up that evening; (4) the decedent eventually made it to the planned meet-up in the vicinity of Carlisle, Pennsylvania. *Id*. at 1-8. These texts are largely silent as to authorship except in one crucial fashion: the messages all involve the same unique telephone number.

In discussing the authentication of text messages under Rule 901, this Court has noted the peculiar status of such communications:

> [T]he mere fact that an e-mail bears a particularly e-mail address is inadequate to authenticate the identity of the author; typically, courts demand additional evidence.
>
> **Text messages are somewhat different in that they are intrinsic to the cell phones in which they are stored.** While e-mails and instant messages can be sent and received from any computer or smart phone, text messages are sent from the cellular phone bearing the telephone number identified in the text message and received on a phone associated with the number to which they are transmitted. **The identifying information is contained in the text message on the cellular telephone.**[1]

---

[1] While our holding in **Commonwealth v. Koch**, 39 A.3d 996, 1005 (Pa.Super. 2011), concomitantly observes that "cellular telephones are not always exclusively used by the person to whom the telephone number is assigned," there was an explicit issue of joint telephone use in that case. **Id**. at 1005 ("[T]he Commonwealth concedes that [the defendant] did not author

***Commonwealth v. Koch***, 39 A.3d 996, 1004-05 (Pa.Super. 2011) (emphases added).

I glean the following relevant pieces of information from the evidence adduced by the Commonwealth.[2]  From the outset, I note that the decedent was "a confidential informant against" Harper in the realm of narcotics and, consequently, was previously acquainted with him.  ***See*** N.T. Preliminary Hearing, 5/29/19, at 25.  Furthermore, there was also testimony establishing that the decedent asserted that he purchased his heroin from an individual named "Rob."  ***Id***. at 59.

With respect to the pertinent telephone number, Harper utilized it to speak with a prisoner at the Cumberland County Prison on multiple occasions in March and April of 2017.[3]  ***Id***. at 45.  Harper also used the same telephone number to text with a bail bondsman in July 2017, wherein he identified himself by name.  ***Id***. at 47-50.  The Commonwealth also established that the

_____

all of the text messages on her phone.").  No such issue is present in this case, as the only competent evidence of record bespeaks Harper's ownership and use of the at-issue telephone number.

[2]  At the hearing on Harper's motion *in limine*, the Commonwealth incorporated testimony adduced at Harper's preliminary hearing in support of the admission of the at-issue text messages.  Harper did not object and expressly permitted this action.  ***See*** N.T. Hearing, 2/3/2020, at 8-9.

[3]  Specifically, Detective Matthew Johnson listened to recordings of phone calls involving the at-issue telephone number and identified Harper based on recognizing his voice from previous interviews.  ***See*** N.T. Preliminary Hearing, 5/29/19, at 46; ***accord*** Pa.R.E. 901(b)(5).

previous owner of this particular telephone number had ceased to own or use it as of November 2016. *Id*. at 63-64.

Harper previously resided at 351 West North Street, Carlisle, Pennsylvania, which is located in the same block where the decedent went to consummate the aforementioned narcotics deal on the evening of March 6, 2017. *Id*. at 52. Cell tower information similarly confirmed that the device associated with this telephone number was in the same area of Carlisle during the relevant time period. *Id*. at 42-45. Finally, the Commonwealth also adduced testimony that other cell tower information indicated that the same device had traveled between Pennsylvania and North Carolina "multiple times between March and November of 2017." *Id*. at 47-48. This data roughly matched Harper's movements during the same time period. *Id*. at 48-50.

This evidence is readily sufficient to satisfy the Commonwealth's relatively low burden of *prima facie* authentication. In particular, I find the Commonwealth's evidence of verified communications from Harper using the same telephone number during March 2017, *i.e.*, the same time period as the at-issue text messages, to be quite compelling. As this Court previously noted in **Koch**, text messages are uniquely and closely tied to the phone number associated with them. In addition to this circumstantial evidence documenting Harper's contemporaneous ownership and use of this telephone number, the Commonwealth also tied the phone number to the geographic areas of Harper's former residence and the purported narcotics deal, as well as Harper's interstate movements. Viewed in conjunction with the other

information described above, I would find that the trial court abused its discretion in excluding the text messages on authentication grounds.

In sum, I find the Majority's analysis lingers too much on the lack of direct evidence of Harper's authorship of the at-issue text messages, while ignoring the substantial array of circumstantial evidence presented by the Commonwealth. Therefore, while I join the Majority's analysis affirming the exclusion of evidence concerning Harper's prior bad acts pursuant to Rule 404(b), I respectfully dissent as to the portion of the Majority's holding affirming the trial court's exclusion of the text messages on authentication grounds. I would hold that the Commonwealth properly authenticated these text messages and permit them to be introduced at Harper's trial.