J-S20032-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.L., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: Y.T. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2825 EDA 2022 |

Appeal from the Order Entered October 25, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000249-2019

BEFORE:   DUBOW, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                                **FILED JULY 25, 2023**

Appellant, Y.T. ("Foster Mother"), appeals, *pro se*, from the order granting the motion for judicial removal brought by the Department of Human Services of the City of Philadelphia ("DHS") and ordering that A.L., born in 2018 ("Child"), not be returned to Foster Mother's home.  We affirm.

On February 8, 2019, DHS filed an application for emergency protective custody of Child, and a shelter care order was entered.  Child was placed in Foster Mother's care in February 2019.  A dependency petition was filed, and Child was adjudicated as dependent on June 20, 2019.  During the pendency of these proceedings, a petition for termination of Child's biological parents was granted, and the permanency goal was changed to adoption.  On August

_____

[*] Retired Senior Judge assigned to the Superior Court.

12, 2022, Child was removed from Foster Mother's home, and on August 24, 2022, DHS filed the instant motion for judicial removal.

A hearing was held on October 25, 2022, at which a DHS supervisor and investigator testified. Foster Mother testified on her own behalf, and she also called the director of A Second Chance, an agency that conducted home visits after Child's initial removal. The child advocate for Child also called Child's current community umbrella agency caseworker to testify.

The evidence presented by DHS showed that the agency first developed concerns regarding Foster Mother in March 2021 when she requested respite care for Child and Foster Mother then made "harassing" communications to the respite caregiver during the approximate weeklong period when Child resided outside Foster Mother's home. N.T., 10/25/22, at 9-11, 26, 31. In a subsequent home visit in July 2021, Child reported that Foster Mother spanked her, which is contrary to agency policy. *Id.* at 11, 23, 34. Child was removed from Foster Mother's home on August 11, 2021, when, during a home visit relating to Foster Mother's fractious relationship with an older foster child for whom she was caring, a firearm was observed by a caseworker under a couch pillow. *Id.* at 12-13. The DHS supervisor also expressed concerns regarding Foster Mother's alcohol use at the time of removal based upon her smelling of alcohol and erratic conversation style. *Id.* at 16-17.

Child was returned to Foster Mother's home in November 2021, subject to the requirement that Foster Mother submit to a mental health evaluation; however, Foster Mother did not sign a release and allow DHS to access the

evaluation until late February 2022. *Id.* at 18-19, 35-36. The evaluation revealed that Foster Mother had begun therapy in May 2021, even though she had denied being in counseling multiple times during that period; Foster Mother ceased attending therapy sessions in May 2022 shortly after DHS was put in contact with her therapist. *Id.* at 19-20, 25-26. Foster Mother was also involved in an incident during a May 2022 dependency hearing when she was escorted from the courtroom by four sheriffs. *Id.* at 21-22, 39.

Child's ultimate removal occurred on August 12, 2022 when DHS received a report of no utilities or food in Foster Mother's home and her declining mental health; while DHS's visit revealed Foster Mother did have utilities and food in the home, the agency discovered that she was still using corporal punishment on Child by striking her on the head, back, and stomach. *Id.* at 22-23, 38, 40, 54, 56, 61. DHS also requested at the time of removal that Foster Mother submit to random drug screens, which she refused. *Id.* at 51, 57-58.

On October 25, 2022, the trial court entered the order granting DHS's motion for judicial removal and providing for Child's permanent removal form from Foster Mother's home. Foster Mother then filed a timely notice of appeal.[1]

---

[1] Foster Mother filed her concise statement of errors complained of on appeal contemporaneously with her notice of appeal as required by Pa.R.A.P. 1925(a)(2)(i). The trial court filed an opinion on February 15, 2023.

In the statement of questions section of her brief, Foster Mother raises a single issue, concerning whether the trial court's October 25, 2022 order was "unjustified pursuant to **Commonwealth v. Tither**, [] 671 A.2d 1156, 1157 ([Pa. Super.] 1996)[.]" Foster Mother's Brief at 8 (unpaginated). However, this question does not correspond to the issue Foster Mother presents in the argument section of her brief. Moreover, **Tither** has no application to this matter as it involved an appeal from the denial of a suppression motion in a driving under the influence criminal prosecution. Accordingly, we proceed to review the issue Foster Mother raises in the argument section of her brief.[2]

Foster Mother argues that the trial court violated her procedural due process rights by denying her the ability to present evidence to the court "in the form of a copy of her evaluation by her therapist which the [c]ourt refused to enter in as evidence under the pretext that the documents were not self-authenticated." **Id.** at 12. She asserts that these "procedural pretexts" were an insufficient basis to deprive her of her procedural rights and that the court should have afforded her the "opportunity to address these procedural technicalities." **Id.** at 12-13. She also contends that the trial court's decision

_____

[2] While a party's failure to present an issue in the statement of questions will generally result in waiver of that issue, **see** Pa.R.A.P. 2116(a); **Werner v. Werner**, 149 A.3d 338, 341 (Pa. Super. 2016), we do not find waiver here where the defect does not impede our ability to address the merits of the issue Foster Mother does seek to raise. **Werner**, 149 A.3d at 341.

to preclude the admission of the document constituted a clear abuse of discretion. *Id.* at 13.

Procedural due process requires, at a minimum, that litigants receive adequate notice of the litigation, an opportunity to be heard, and a chance to defend oneself before a fair and impartial tribunal with jurisdiction to hear the case. *In the Interest of S.L.*, 202 A.3d 723, 729 (Pa. Super. 2019); *S.T. v. R.W.*, 192 A.3d 1155, 1161 (Pa. Super. 2018). "Significantly, the in-court presentation of evidence is a fundamental component of due process." *S.L.*, 202 A.3d at 729; *see also M.O. v. F.W.*, 42 A.3d 1068, 1072 (Pa. Super. 2012). Whether a due process violation occurred raises a question of law for which our standard of review is *de novo*, and our scope of review is plenary. *S.L.*, 202 A.3d at 729.

Generally, a foster parent is not deemed a party to and lacks standing to fully participate in dependency proceedings. 42 Pa.C.S. § 6336.1(a); *In the Interest of M.R.F., III*, 182 A.3d 1050, 1055 (Pa. Super. 2018). Specifically, under the Juvenile Act, a foster parent is entitled to notice of a hearing and the right to be heard regarding the child's "adjustment, progress[,] and condition," but the foster parent does not have full standing to participate as a party in the proceeding nor is a foster parent entitled to the statutory rights inherent to a party under the Act. 42 Pa.C.S. § 6336.1(a), (b)(1); *M.R.F., III*, 182 A.3d at 1055-56; *see also* 42 Pa.C.S. §§ 6337, 6338. "Nevertheless, our case law has carved a narrow exception to permit the limited participation of a foster resource who has attained prospective-

adoptive status: prospective adoptive parents have standing to contest the child welfare agency's decision to remove a child it placed with them in anticipation for adoption." ***M.R.F., III***, 182 A.3d at 1056; ***see also In re Griffin***, 690 A.2d 1192, 1201 (Pa. Super. 1997). Here, because Foster Mother was indisputably a prospective adoptive parent of Child and the motion for judicial removal sought to permanently ensure the removal of Child from Foster Mother's care, she had standing in the below proceeding for the limited purpose of challenging the removal. ***M.R.F., III***, 182 A.3d at 1056; ***Griffin***, 690 A.2d at 1201.

Here, there is no question that Foster Mother was able to participate in the hearing on the motion for judicial removal, as she was represented by counsel of her choice,[3] she was permitted to present evidence and argument, and she cross-examined the witnesses offered against her. Also, the record reflects the Foster Mother was served with the motion for judicial removal, which detailed DHS's factual allegations as to why Child should be permanently removed from her home, as well as the notice setting the date and time of the hearing on the motion.

Instead, Foster Mother's due process argument narrowly focuses on her attempt to introduce a mental health evaluation by her therapist at the trial court hearing. N.T., 10/25/22, at 86-87. DHS objected to its admission on

_____

[3] Foster Mother was represented by privately retained counsel at the hearing, but her counsel withdrew after the court granted the motion for judicial removal, citing Foster Mother's decision to represent herself in this appeal.

authentication grounds, and the trial court sustained the objection. *Id.* at 87. We conclude that there was no due process violation as Foster Mother was not precluded from admitting evidence to support her case; instead, the court simply ruled that the proffered evidence was inadmissible under the Pennsylvania Rules of Evidence. Foster Mother's due process rights do not trump our rules of evidence.

To the extent Foster Mother challenges the trial court's evidentiary ruling barring the admission of the evaluation, we note that authentication generally entails a relatively low burden of proof and requires only, as stated in Rule of Evidence 901, that the proponent "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a); *see also Commonwealth v. Jackson*, 283 A.3d 814, 818 (Pa. Super. 2022); *Zuk v. Zuk*, 55 A.3d 102, 112 (Pa. Super. 2012). Rule 901 provides that "the testimony of a witness with personal knowledge that a matter is what it is claimed to be may be sufficient to authenticate or identify the evidence." *Gregury v. Greguras*, 196 A.3d 619, 633 (Pa. Super. 2018); *see* Pa.R.E. 901(b)(1). An evidentiary item may also be authenticated based on its "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Pa.R.E. 901(b)(4). "A proponent of a document need only present a *prima facie* case of some evidence of genuineness in order to put the issue of authenticity before the factfinder." *Gregury*, 196 A.3d at 633-34. The proponent may

authenticate a document through direct proof or exclusively through circumstantial evidence. *Id.* at 633; *Zuk*, 55 A.3d at 112.

When Foster Mother sought to mark the mental health evaluation completed by her therapist, Dr. Poole, as an exhibit, counsel for DHS objected, stating that Foster Mother "has no way to authenticate it. If that's Dr. Poole's evaluation, [Foster Mother] needs Dr. Poole here." N.T., 10/25/22, at 87. Foster Mother's counsel stated that he "was just going to have [Foster Mother] say that this was the evaluation that was given to her. She would be able to authenticate" it. *Id.* The trial court ruled that Foster Mother "can't self-authenticate" the evaluation and did not admit the document or allow Foster Mother to present any evidence related to authentication. *Id.*

We conclude that the trial court abused its discretion in not permitting Foster Mother to attempt to authenticate the evaluation document. *M.R.F., III*, 182 A.3d at 1056 (we apply an abuse of discretion standard of review when reviewing trial court evidentiary rulings). To the extent the trial court ruled that the testimony of the author of the document, Dr. Poole, was necessary for its authentication, this was an incorrect statement of the law. Rule 901 and our caselaw interpreting the rule do not require that the author of a document personally testify as to the genuineness of a document for it to be authenticated.[4]

---

[4] *See, e.g.*, Pa.R.E. 901(b)(1) (requiring only testimony of a witness with knowledge for authentication); *Gregury*, 196 A.3d at 634 (trial court abused
*(Footnote Continued Next Page)*

Furthermore, the fact that Foster Mother could not self-authenticate the evaluation, as the trial court stated at the hearing, N.T., 10/25/22, at 87, does not end the authentication inquiry. Although the evaluation does not fall within any of the types of self-authenticating evidence set forth in Rule of Evidence 902 that do not require extrinsic evidence for authentication, **see** Pa.R.E. 902(1)-(15), Foster Mother could still have attempted to authenticate the document under the general authentication standard set forth under Rule 901. For example, Foster Mother could have provided testimony that she requested that Dr. Poole complete the evaluation document and Dr. Poole personally handed it to her, which could have met Foster Mother's burden of showing that the document "is what [she] claims it is." Pa.R.E. 901(a). The trial court's refusal to allow Foster Mother any opportunity to authenticate the evaluation through her testimony constituted an abuse of discretion.

While the trial court improperly barred Foster Mother from presenting testimony to authenticate the evaluation, she suffered no prejudice from the erroneous ruling and therefore she is entitled to no relief on appeal. An

_____

discretion by ruling that handwritten, unsigned documents by proponent's deceased father were unauthenticated where son testified that the writing on the documents matched that of the decedent and the stationary was the type that the decedent used); **Zuk**, 55 A.3d at 112-13 (maps were properly authenticated through testimony of joint property owner in spite of the fact that surveyor who prepared the map did not testify and proponent did not even know the name of the surveyor); **see also Commonwealth v. Williams**, 241 A.3d 1094, 1102 (Pa. Super. 2020) (document may be authenticated through, inter alia, "the testimony of a witness who saw the author sign the document" or "proof that the document or its signature is in the purported author's handwriting").

evidentiary ruling constitutes grounds for reversal only if the complaining party was prejudiced by the ruling, with prejudice found where the trial court error could have affected the judgment. ***Wright v. Residence Inn by Marriott, Inc.***, 207 A.3d 970, 974 (Pa. Super. 2019); ***Reott v. Asia Trend, Inc.***, 7 A.3d 830, 839 (Pa. Super. 2010), ***affirmed***, 55 A.3d 1088 (Pa. 2012). Even if Dr. Poole's evaluation of Foster Mother were admitted, there is no showing that its contents would have been admitted for their truth under the rules of evidence,[5] nor does it appear that Foster Mother intended to delve into Dr. Poole's diagnosis and evaluation during her testimony. ***See*** N.T., 10/25/22, at 20 (Foster Mother's counsel objecting to question posed to DHS supervisor regarding substance of her conversations with Dr. Poole). Instead, it appears that Foster Mother solely sought to introduce the document to demonstrate that she provided the mental health evaluation to DHS in February 2022 as requested, a fact to which she still testified despite the trial court's ruling, and that a DHS supervisor confirmed during her own testimony. ***Id.*** at 19, 36-37, 44, 86, 88. Therefore, it appears that the admission of the evaluation as an exhibit would have added no value to Foster Mother's case, and she avers to no prejudice in her brief aside from the mere fact of the

_____

[5] It does not appear that any of the relevant hearsay exceptions apply to the evaluation. ***See*** Pa.R.E. 803, 803.1, 804; ***see also*** Pa.R.E. 802, Comment. Notably, the evaluation would not have been admissible under the business records exception as no testimony was offered by a document custodian and the document contained statements of diagnosis or opinion, which are not admissible under that exception. ***See*** Pa.R.E. 803(6) & Comment; ***In re A.J.R.-H.***, 188 A.3d 1157, 1167-69 (Pa. 2018).

document's preclusion. Accordingly, as Foster Mother was not harmed by the trial court's erroneous evidentiary determination, she is entitled to no relief.

Having found no merit to Foster Mother's appellate issue, we affirm the trial court's October 25, 2022 order granting DHS's motion for judicial removal and barring Child's return to Foster Mother's care.[6]

Order affirmed.

Judge Kunselman joins the memorandum.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/25/2023

---

[6] The statement of the case portion of Foster Mother's brief includes multiple argumentative assertions regarding various supposed errors occurring over the course of the dependency proceedings. *See, e.g.*, Foster Mother's Brief at 9-10 (Child's removal was "based on false statements"; the DHS supervisor committed perjury in a prior proceeding; DHS violated federal health care privacy law; DHS supervisor committed perjury in prior proceeding; DHS failed to provide discovery; and Foster Mother was denied the right to counsel and to participate in prior proceedings in this case). In addition to the inclusion of such argument in the statement of the case being in violation of our appellate rules, *see* Pa.R.A.P. 2117(b), none of these additional claims of error are sufficiently developed such that we could conduct a review on their merits.