2022 PA Super 35

| MICHAEL CALISTO, | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL RODGERS | : | No. 2834 EDA 2018 |

Appeal from the Judgment Entered, November 2, 2018,
in the Court of Common Pleas of Philadelphia County,
Civil Division at No(s): 160801903.

BEFORE: PANELLA, P.J.; BENDER, P.J.E.; BOWES, J.; LAZARUS, J; OLSON, J.; DUBOW, J.; KUNSELMAN, J.; MURRAY, J.; and McCAFFERY, J.

OPINION BY KUNSELMAN, J.:                    **FILED FEBRUARY 25, 2022**

## I.    Introduction

This action for quiet title involves the ownership of three townhouses in Philadelphia.   The Seller of the townhouses, Michael Calisto, appeals from the judgment entered in favor of the Buyer, Michael Rodgers, following a non-jury trial.   Because Buyer's three deeds to the properties bore a dead woman's "signature" as grantor, a panel of this Court[1] initially invalidated those deeds, vacated the judgment, and remanded.   Both parties petitioned for *en banc* reargument.   We granted their request and withdrew the panel decisions.

After further review, we conclude Seller is not entitled to relief.   Sitting as finder of fact, the trial court determined that Seller signed the deeds using his late mother's name as the grantor.   Because those deeds satisfy the statute of frauds, we affirm.

---

[1] This author and the Honorable Kate Ford Elliott, P.J.E. (retired) formed the panel majority.  The Honorable Mary Jane Bowes, J. dissented.

## II. Procedural Background & Factual Findings

In his operable complaint, Seller sought quiet title to the three townhouses.[2] The matter proceeded to a bench trial in 2018. The trial court related the relevant facts of this case as follows:

> On September 18, 2001, [Seller's] mother, Joan Calisto, passed away leaving the three properties to [Seller] as sole executor and beneficiary under the Will of Joan Calisto. Since the date of his mother's passing, [Seller] probated the will, but he never paid the appropriate transfer tax that would [permit recordation of his interests in the properties]. Instead, [Seller] took up residence in the 647 N. 16th Street property, while allowing John Callaway to occupy the 651 N. 16th Street and the 424 N. 32nd Street property to remain uninhabited for several years.
>
> [Fifteen years after Joan's death, Buyer] met with [Seller] after viewing the properties. They agreed that [Buyer] would pay [Seller] $150,000.00 in cash for the properties.
>
> On July 27, 2016, a day after agreeing on the aforementioned sale price, [Buyer] returned to [Seller] in order to pay $10,000.00 in consideration for an agreement of sale. Over the next week and a half, [Buyer] withdrew money from his personal bank accounts and received cash advances in order to compile the requisite cash funds to conduct the transaction with [Seller]. Once [Buyer] had the promised $150,000.00 cash in his possession, he returned to [Seller] to finish the deal. [Buyer] gave [Seller] the cash in exchange for three deeds, one for each of the properties. [Buyer] subsequently recorded the deeds.
>
> \*     \*     \*
>
> Based on the entirety of the recorded testimony and evidence at trial . . . [Buyer] was more credible than [Seller]

---

[2] Instead of filing a counterclaim, Buyer initiated a separate action for quiet title against Seller. Buyer's action was later dismissed. He did not appeal.

J-E02003-21

regarding the alleged, fraudulent transaction for the deeds to the properties.

> . . . [Seller] testified that he . . . never met with [Buyer] and John Callaway at any point during the subject time period. [Seller] never called John Callaway as a witness to corroborate this fact. However, [Buyer] testified that when he went to meet with [Seller] to execute the transaction, both [Seller] and John Callaway were present. Additionally, Hattisha Rodgers testified to facts that strengthened the credibility of [Buyer's] version of events. Specifically, Ms. Rodgers testified that on the day that the transaction took place, she witnessed [Buyer] take a "duster bag" filled with cash to the 651 N. 16th Street property, exit the vehicle to meet with [Seller] and another gentleman outside of the house, and re-enter her car with a folder filled with papers that [Buyer] received in exchange for the cash. Thus, this court determined that [Buyer's] version of the facts, supported by his witness' testimony, was more credible than [Seller's] uncorroborated testimony.

Trial Court Opinion, 11/28/18, at 2-3, 6-8 (citations omitted).

Based on the foregoing, the trial court found that Seller delivered three executed deeds for the three townhouses to Buyer. Thus, the court impliedly inferred that Seller had signed the deeds in his mother's name and rejected Seller's allegation that Buyer forged Joan's signature in an attempt to steal the properties. The trial court ruled that Buyer had "received the deeds from [Seller] without reason to question the validity of the signatures, as they were received from [Seller] as executor and beneficiary of his mother's property." *Id.* at 10-11. The court entered a non-jury decision in favor of Buyer.

Seller moved for post-trial relief. Seeking judgment as a matter of law, Seller claimed that the trial court "violated Pennsylvania's statute of frauds." Seller's Motion for Post-Trial Relief at 2. In the alternative, Seller requested

a new trial, because the trial court "abused its discretion by not allowing [him] to question [Buyer] about [Buyer's] criminal history and by not allowing [Seller] to produce a document detailing [Buyer's] criminal convictions and sentences." *Id.* The court denied post-trial relief, and this timely appeal followed.

### III. Analysis

Seller raises the following three claims of error:

1. Did the trial court err as a matter of law in misapplying the statute of frauds?

2. Did the trial court err as a matter of law by not allowing evidence of [Buyer's] criminal conviction?

3. Did the trial court commit errors of law by treating this case as competing claims of fraud . . . ?

Seller's Brief at 4.

### A. Statute of Frauds

In his first issue, Seller asserts the trial court erroneously refused to invalidate the three deeds. He claims the deeds are invalid under the statute of frauds, because they bear the "signatures" of the late "Joan Calisto" as the grantor. Seller argues that his mother bequeathed the properties to him in her will, and, because the deeds are invalid, no legally sufficient evidence proved that he granted those properties to anyone. Thus, he asked the trial court to strike the deeds from the property records and to order the Clerk of Records of Philadelphia County to convey the properties to him.

When reviewing an equitable decision, like a quiet-title action,[3] our scope and standard of review are deferential. As this Court has explained:

> We will reverse only where the trial court was palpably erroneous, misapplied the law, or committed a manifest abuse of discretion. Where there are any apparently reasonable grounds for the trial court's decision, we must affirm it. Moreover, the function of this Court on an appeal from an adjudication in equity is not to substitute our view for that of the lower tribunal; [we are] to determine whether a judicial mind, on due consideration of all the evidence, as a whole, could reasonably have reached the conclusion of that tribunal . . . when reviewing the results of a non-jury trial, we are bound by the trial court's findings of fact, unless those findings are not based on competent evidence.

***Nebesho v. Brown***, 846 A.2d 721, 725-726 (Pa. Super. 2004) (citations and some punctuation omitted).

We begin by emphasizing that the trial court found, as a factual matter, that Seller executed the deeds in question and delivered them to Buyer in exchange for $150,000. Seller's use of Joan's signature, rather than his own, does not change the fact that Seller volitionally put pen to paper and signed the deeds. Thus, the three deeds were, in fact, "signed by the party . . . granting" title, as the statute of frauds requires. 33 P.S. § 1.

Disputing the trial court's factual determination that he signed the deeds in his mother's name, Seller asserts that "nothing support[s] that allegation

---

[3] Quiet title is a legislatively created action that the Supreme Court of Pennsylvania eventually incorporated into the Rules of Civil Procedure. **See** Pa.R.C.P. 1061-1067. Although of statutory origins, a suit to quiet title is actually an equitable proceeding "descended from two suits in chancery — the bill of peace and the bill to remove cloud." *Enhancing the Marketability of Title: The Suit to Quiet Title*, 68 YALE L.J. 1266 (1959).

besides the bald-faced accusation made by [Buyer]." Seller's Brief at 31. However, what Seller calls an "allegation" is no longer so. At trial, Buyer and his witness testified that Seller executed and delivered the deeds to Buyer. Their testimony, which the trial court credited, supports the inference that Seller executed the deeds in his mother's name.[4]

According to Buyer, after he paid Seller the purchase price in full, Seller "gave [Buyer] deeds." N.T., 3/27/18, at 58. Seller told Buyer that he could trust the documents Seller gave him, because Seller owned the properties "by way of his mother." *Id.* at 60.

Additionally, when Seller's attorney cross-examined Buyer, the following exchange occurred:

> Q: So, it was your understanding that Joan Calisto was alive at [the time this sale occurred]?
>
> A: No, I already knew that Joan Calisto was deceased.
>
> Q: But you understand that there's a difference between an Estate and an individual, correct?
>
> A: No, I didn't - - at the time, no, I didn't know. Now I know these things.
>
> [Seller] explained to me that he had every right to do what he did as far as executing the sale of the property, because he, with his deceased mother, gave him all of the rights to do these things. So I took that under consideration, thinking that [Seller] was telling

---

[4] Since the Seller had the exclusive right to transfer the properties, how he signed the documents is of no moment. He could have used his name as executor, or his mother's name. What matters is that he signed the deeds with the intent to transfer his interest, and as such, he is bound by his action.

> me the right thing, because I had no knowledge . . .
> of that until meeting [Seller].
>
> Q: But was it ever represented to you that [Seller] owned
>    the properties?
>
> A: Of course.
>
> Q: But he never wrote his name on this document?
>
> A: [Seller] said he didn't have to write - - he controlled,
>    I guess, he controlled the property. The property was
>    his, because his mother gave him the property.
>
> Q: So did you ask [Seller] why he just didn't sign his
>    name?
>
> A: No, I didn't think anything of it. [Seller] told me what
>    he told me, and I had no knowledge. Had I known it
>    now, it would have never happened.

*Id.* at 158-59. In light of Buyer's above responses, the trial court could reasonably conclude that Seller signed Joan Calisto's name on the deeds.

Given the state of the public records for the properties, using Joan's name was the only way for Seller to convey title to Buyer without first recording deeds into himself. In the 15 years since Joan's death, Seller neglected to record deeds reflecting that title had passed from Joan, through her estate, to him.

Seller's failure to record deeds in his name left a gap in Philadelphia's property records. He could only fill that gap by recording deeds from Joan's estate into himself. The trial court rationally inferred that Seller signed his late mother's name on the three deeds, so that record title would skip him and go directly from Joan to Buyer.

As stated above, "we are bound by the trial court's findings of fact, unless those findings are not based on competent evidence." **Nebesho**, 846 A.2d at 726. The testimony of Buyer and his witness is competent evidence adequately supporting the trial court's decision. Accordingly, as a factual matter, Seller signed the deeds.

Significantly, the statute of frauds does not require that the signer of a document to use only his own name. "As early as 1814, Lord Ellenbrough removed any doubt that 'signed' as used in the statute did not require [the] handwritten signature" of the party to be charged. MURRAY ON CONTRACTS § 75 at 371 (5th ed. 2011) (citing **Schneider & Another v. Norris**, 105 Eng. Rep. 388 (1814)). "No particular . . . signature is essential." **Id.** Indeed, "there is no requirement in the statute of frauds or the decisional law that a signature be in any **particular** form." **Zuk v. Zuk**, 55 A.3d 102, 107 (Pa. Super. 2012) (some punctuation omitted) (emphasis in original).

Any signature or mark, "when coupled with an intent by the maker that it be a signature, will satisfy the statute of frauds is so well settled that citations to the legions of cases so holding are unnecessary." THE RESTATEMENT (SECOND) OF CONTRACTS § 134. The "essential question has little to do with the particular symbol used" on the contract or deed. MURRAY at 372. "Rather, the question is, **did the party execute . . . the symbol with a present intention, actual or apparent, to authenticate the writing as the signer of the writing?**" **Id.** (emphasis in original). Whether the signer manifested that intention "is a question of fact." **Id.** As such, the statute of frauds does

not mandate that the conveyor use his own name, because the law has never restricted an individual to use only his name when signing a document in order to be bound thereby.

Nearly a century ago, in **Coltun v. Getz**, 97 Pa. Super. 591 (1930) (*en banc*), this Court enforced a land contract against a person who signed it using someone else's name. There, Getz contracted to purchase a hotel and to maintain it, along with other co-purchasers. Getz told his co-purchasers that he would use his wife's name and signature on the contract, but "he personally would be a party to the enterprise and [co-purchasers] could look to him for the fulfillment of all terms and obligations . . . ." **Id.** at 593.

After title passed to Getz and his co-purchasers, Getz failed to contribute his share of taxes. The co-purchasers sued him for breach of the contract. Getz moved for judgment as a matter of law, on the grounds that his name did not appear within the four corners of the contract. The trial court ruled in Getz's favor. On appeal, we reversed.

This Court held "that a man, either in his general dealings or in a particular transaction, may adopt whatever name he chooses, and he will be bound accordingly." **Id.** at 594. "All that the law looks to is the identity of the individual, and, when that is ascertained and clearly established, the act will be binding on him and others." **Id.** It was irrelevant "whether the name used [was] purely artificial and fictitious or that of another person, if the party using it [was] the [person] interested in the transaction." **Id.** Merely because Getz signed his wife's name – and not his own – did not deprive the co-

- 9 -

purchasers "of their right to sue [Getz] on a contract to which he was a party in fact, if not in name." ***Id.***

Like Getz, Seller here signed legal documents using someone else's name. Seller thereby led Buyer to believe these signatures would bind Seller and transfer his title to the townhouses to Buyer. The mere fact Seller used Joan's name, instead of his own, to complete the transaction does not deprive Buyer of his right to rely upon Seller's representations during negotiations and at delivery that the deeds were properly executed.[5]

Seller's invocation of the statute of frauds to invalidate a transaction "to which he was a party in fact, if not in name," fails. ***Id.*** The statute of frauds does not create a legal fiction that the three deeds bear the signature of a dead woman and, therefore, are invalid, as Seller contends. Obviously, Joan did not sign the deeds from beyond the grave. Seller signed them using her name. As we have held, "There is no sanctity in a name that right and justice should be sacrificed to it." ***Coltun***, 97 Pa. Super. at 594.

The trial court found that Seller and Buyer, in fact, made a contract to transfer title to the three townhouses. Seller may not shirk his contractual obligations, simply because he signed the deeds using someone else's name. The statue of frauds "is to be used as a shield and not as a sword, as it was

---

[5] ***See also***, ***Scott v. Penn Title Ins. Co.***, 10 Pa. D. & C.2d 129, 134 (C.C.P. Berks 1957) (finding a mortgage to be valid and "proper in order to pass a good title of record" to mortgagee, despite mortgagor having signed mortgage and note using the name of a third party).

designed to prevent frauds, not to encourage them." ***Empire Properties, Inc. v. Equireal, Inc.***, 674 A.2d 297, 302 (Pa. Super. 1996).

Seller's first issue is meritless.

## B.    *Evidence of Buyer's Criminal History*

Next, Seller seeks a new trial, because the trial court prohibited him from impeaching Buyer based on Buyer's prior conviction of robbery. While cross-examining Buyer, Seller's attorney asked, "Can you tell me if you've ever been convicted of any crime that involves dishonesty?" N.T., 3/27/18, at 141-42. Believing Seller needed certified records of a conviction to impeach a witness, Buyer objected.

Seller's lawyer produced a printout of a court docket to reflect Buyer's prior conviction. ***See id.*** at 141-46. The docket showed Buyer was convicted of robbery and received a minimum sentence of three years. Because Buyer should have been released in 2009, the release date was within the ten-year period required for admission of the conviction to impeach him under Pennsylvania Rule of Evidence 609.

The trial court sustained the objection, because Seller's attorney did not have a certified copy of the court record. The court stated:

> [Seller's] counsel failed to present credible documentation of [Buyer's] conviction. Instead of a certified record, [Seller] presented an uncertified computer printout. Assuming, *arguendo*, [Buyer's] conviction could have been properly admitted into evidence, this court does not believe that failing to admit it into evidence constitutes reversible error, as the court was aware that [Buyer] had a criminal history. Despite having considered [Buyer's] criminal past, this court made its determination based on the credibility of

the parties' testimony with regards to the subject transaction. The court's decision would have remained the same even if [Buyer's] past criminal conviction was admitted into evidence.

Trial Court Opinion, 11/28/18, at 9 (citation omitted).

On appeal, Seller argues that Buyer's conviction in 2006 for robbery (infliction of serious bodily injury)[6] is *crimen falsi*. In his view, the trial court should have admitted the evidence for impeachment purposes, under Rule 609. Seller further asserts the misapplication of this rule was harmful error, because the court ruled in favor of Buyer based on his credibility.

When reviewing an evidentiary ruling, this Court defers to the trial court, and we reverse in limited circumstances. As we have said:

> Admission of evidence is within the sound discretion of the trial court, and we review the trial court's determinations regarding the admissibility of evidence for an abuse of discretion. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Czimmer v. Janssen Pharm., Inc.*, 122 A.3d 1043, 1058 (Pa. Super. 2015) (quoting *Conroy v. Rosenwald*, 940 A.2d 409, 417 (Pa. Super. 2007)).

An "abuse of discretion" is not merely an error of judgment. *Paden v. Baker Concrete Constr., Inc.*, 658 A.2d 341, 343 (Pa. 1995). A trial court abuses its discretion by making a manifestly unreasonable, arbitrary, or capricious decision; by failing to apply the law; or by allowing prejudice, bias,

---

[6] 18 Pa.C.S.A. § 3701(a)(1)(i).

or ill will to influence its decision. ***See, e.g., Harman v. Borah***, 756 A.2d 1116, 1123 (Pa. 2000).

Pennsylvania Rule of Evidence 609 provides:

> **(a) In General.** For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or *nolo contendere*, must be admitted if it involved dishonesty or false statement.
>
> **(b) Limit on Using the Evidence After 10 Years.** This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if:
>
> > (1) its probative value substantially outweighs its prejudicial effect; and
> >
> > (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

Pa.R.E. 609. Pursuant to subsection (a), when the conviction is less than ten-years-old, its admission is mandatory – the evidence of the conviction "***must*** be admitted." ***Id.*** (emphasis added). ***See also*** Pa.R.E. 609 Comment (stating, "Where the date or conviction or last date of confinement is within ten years of the trial, evidence of the conviction of a *crimen falsi* is *per se* admissible.").

"Robbery and burglary are considered *crimen falsi* and convictions for these offenses are admissible for impeachment purposes." ***Commonwealth v. Trippett***, 932 A.2d 188, 199–200 (Pa. Super. 2007). Buyer does not dispute this. Instead, he relies on his argument below – which the trial court

adopted – that Seller needed to produce the certified record of the conviction. Buyer's contention has no support in either the language of the Rule or case law. Indeed, neither the trial court nor Buyer cite to any authority to support the proposition that Seller needed a certified record of Buyer's conviction to use it for impeachment purposes.

Thus, the trial court grafted a certified-record requirement onto Rule 609, where none exists.[7] By refusing to allow Seller's attorney to cross-examine Buyer regarding his prior conviction of robbery, the court failed to apply Rule 609 as plainly written. It also overrode the comment to that Rule, which made evidence of Buyer's robbery conviction "*per se* admissible." Pa.R.E. 609 Comment. The trial court abuses its discretion in failing to admit this evidence; Rule 609 and its comment leave no room for discretion in this scenario.

However, erroneously barring evidence of a prior conviction to impeach a witness does not automatically require us to grant Seller a new trial. As mentioned, an evidentiary error only warrants a retrial if the mistake harmed the appellant. **See Czimmer**, **supra.**

Here, the trial court said it knew of Buyer's prior conviction and that, if it had received the impeaching evidence, its credibility determination would

---

[7] It appears that the trial court confused impeachment by prior conviction with authentication of evidence under Pennsylvania Rule of Evidence 902. We also note that trial courts may generally take judicial notice of prior violations and convictions under Pennsylvania Rule of Evidence 201. **See Commonwealth v. Taylor**, 137 A.3d 611, 617 n.1 (Pa. Super. 2016) (*en banc*).

not have changed. Seller's "attempt to impeach the credibility of [Buyer] would not alter the court's determination of [Buyer's] credibility on this issue of the property transfer in the face of the entirety of what was presented at trial." Trial Court Opinion, 11/12/18, at 9. Because the trial court, who viewed the witnesses' body language and heard their testimony, was greatly convinced of Buyer's honesty, its refusal to admit his conviction for purposes of impeachment was harmless error in this bench trial.

This issue affords Seller no appellate relief.

## C.    *Competing Claims of Fraud*

In his final claim of error, Seller contends the trial court mistakenly treated this case as one of competing claims of fraud and impermissibly shifted the burden of proof. To support this assertion, Seller relies upon one quote from the trial court's Rule 1925(a) Opinion. **See** Seller's Brief at 35 (quoting page 6 of the trial-court opinion: "As this was a case in which both parties alleged fraud on the part of the other, the court was tasked with determining and weighing the credibility of Plaintiff vs. Defendant.").

However, Seller did not raise this issue in his post-trial motions or in his Rule 1925(b) Statement. This results in waiver. **See**, **e.g.**, Pa.R.A.P. 1925(b). When an appellant "has waived a point below, either expressly or by a failure to assert it, that party cannot assert the point on appeal." 16A STANDARD PENNSYLVANIA PRACTICE 2d § 91:26 (citing Pa.R.A.P. 302(a)).

Seller raises this competing-claims-of-fraud issue for the first time on appeal. Because he did not raise or argue this theory below, Seller has not preserved it for appeal.

We dismiss the final issue as waived.[8]

## IV. Conclusion

In sum, the trial court found Seller signed his late mother's name on the three deeds to convince Buyer that Seller could transfer his legal title to the townhouses. Using his mother's name as an alias to sign the deeds satisfied the signature requirement of the statute of frauds, and the trial court properly denied Seller's request for quiet title.

Judgment affirmed.

President Judge Panella, President Judge Emeritus Bender and Judges Lazarus, Olson, Dubow, Murray and McCaffery join this Opinion.

Judge Bowes files a Concurring Opinion in which Judges Olson, Dubow and Murray join.

_____

[8] Even if Seller had preserved this issue for our review, we would reject it. Someone clearly signed Joan Calisto's name on the deeds because she was dead when they were signed. Accordingly, on the facts as the parties alleged them below, one party was attempting to defraud the other.

If Seller signed Joan's name and then reneged on the transaction, he was attempting to defraud Buyer of the purchase price. On the other hand, if Buyer signed Joan's name and recorded the deeds without paying for the properties, he was attempting to defraud Seller (or Joan's estate) of title to the townhouses. Thus, the trial court correctly viewed this as a case of competing claims of fraud. It resolved those claims in favor of Buyer.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/25/2022