J-A25031-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KEVIN FRENCH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AGNIESZKA PATKOWSKA | : | |
| | : | |
| Appellant | : | No. 696 WDA 2023 |

Appeal from the Order Entered May 15, 2023
In the Court of Common Pleas of Allegheny County Family Court at
No(s):  FD 21-007549-0007

BEFORE:   BOWES, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                **FILED: December 29, 2023**

Appellant, Agnieszka Patkowska ("Mother"), appeals from the order granting Appellee, Kevin French ("Father"), shared physical custody of their daughter ("Child").[1]  After careful review, we remand for further proceedings.

Mother and Father married in 2009, and Child was born in 2015.  The couple separated in February 2021 when Father moved out of the marital home.  On March 24, 2021, Father filed a complaint in divorce raising claims

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Neither party has requested that they be identified in the caption by their initials due to the sensitive nature of this custody matter.  Therefore, we use the parties' names in the caption "as they appeared on the record of the trial court at the time the appeal was taken."  Pa.R.A.P. 904(b)(1), (2).  We will, however, refer to the minor involved in this dispute as "Child" so as to protect her identity.

of divorce, custody, and equitable division of the marital estate.[2] In his custody claim, Father requested shared legal and physical custody of Child.

On April 22, 2021, Mother filed a petition for a protection from abuse ("PFA") order alleging verbally abusive and threatening behavior by Father during interactions in the prior week, as well as three instances in which Father had strangled her in 2019 and 2020 and a 2020 incident when Father threw a metal tool at Mother causing a cut on her head. A temporary PFA order was issued on the same date that the petition was issued, and Father was ordered to have no contact with Child. The parties resolved the PFA matter through a May 28, 2021 consent order that extended the term of the temporary PFA order through April 21, 2022 but provided that Father could continue to seek custody of Child.

The parties were initially ordered to participate in a custody mediation in May 2021, but it was cancelled upon Mother's filing of a domestic violence waiver pursuant to local rule. **See** Allegheny County Civil and Family Court Rule 1915.3(c)(viii). The parties participated in a conciliation before a domestic relations officer on August 9, 2021, which did not lead to an agreement on custody. On September 7, 2021, the parties entered into an interim consent order providing that Mother had primary physical custody of Child and Father had supervised partial physical custody on Tuesday and

---

[2] As of the date of Mother's appeal from the at-issue custody order, the divorce and equitable division claims had not been resolved.

Sunday every week, with Father's total amount of custody increasing from four to six hours over the following two months. The order further provided that Father was required to participate in a domestic abuse education and intervention group and Mother was required to enroll Child in therapy with a provider with a background in domestic violence.

On October 23, 2021, Mother filed an indirect criminal contempt ("ICC") complaint against Father related to an incident two days' prior in which Mother, while she was picking Child up from school, observed Father standing outside the school in a "very aggressive stance." ICC Complaint, 10/23/21. On November 30, 2021, an order was entered continuing the ICC complaint generally for six months, extending the temporary PFA order to July 21, 2022, and providing that Father shall not be in the vicinity of Child's school at pick-up and drop-off time. The order further provided that Father did not admit guilt. On December 6, 2021, a second interim custody consent order was entered providing that Father would have supervised partial physical custody on Tuesdays and Sundays for a total of eight hours per week.

On January 25, 2022, Father submitted a motion for special custody relief seeking the removal of the supervision requirement for his custody periods. The trial court denied this motion. The trial court then held judicial conciliations on March 7, April 12, and June 15, 2022. At the conciliations, the trial court received information regarding Father's individual and group therapy and Child's therapy. In an April 14, 2022 order, the court noted its concern that Mother was participating in Child's individual therapy and

directed Father to become more involved in Child's therapy. The court also ordered that Father be allowed to begin having unsupervised visits with Child. In a May 12, 2022 order, the court directed that Bruce Chambers, Ph.D., conduct a custody evaluation.

Following the judicial conciliations, the trial court allotted three days for testimony and evidence at trial. The trial court conducted an *in camera* interview with Child on October 26, 2022, but no substantive testimony was taken at the interview. On December 8, 2022, after a second pre-trial conference, the trial court issued an interim custody order expanding Father's unsupervised custody time to overnights from Saturday morning to Sunday evening each week.

The trial court scheduled trial to take place on February 1, 2, and 9, 2023. The court ordered the parties to submit a pre-trial statement identifying each of their witnesses, including expert witnesses, a week in advance of trial. In Mother's pre-trial statement, she identified several fact witnesses, including her mother, Iwonna Windak, and a neighbor, Elizabeth Green; in addition, she identified two expert witnesses, Beth A. Bliss, Psy.D., and Kelly M. Champion, Ph.D. Upon receipt of Mother's pre-trial statement, Father submitted a motion *in limine* seeking to preclude the testimony of Dr. Champion, who Mother intended to call to offer an opinion on the effect of domestic violence on children. On January 31, 2023, the trial court entered an order granting Father's motion and precluding Dr. Champion's testimony. Mother made an oral motion for reconsideration of this order one the first day of trial, N.T.,

2/1/23, at 5-7, which the trial court denied by order entered on February 2, 2023 without prejudice to Mother raising this issue after the testimony of the other expert witnesses. Following a third day of trial, Mother submitted a written motion for reconsideration of the grant of Father's motion *in limine*, which the trial court denied in a March 24, 2023 order.

During the first day of trial, Father called Dr. Chambers, who performed the court-ordered custody evaluation and who completed his direct testimony on that day. Father also began his direct testimony on the first day of trial. The following day, Father concluded his direct testimony and Mother began cross-examining Father. Father also called two employees from the company that supervised several of Father's visits with Child, and Mother presented the testimony of her current and former therapists out of order. The third day of trial began with Mother's cross-examination of the custody evaluator, Dr. Chambers, and then Father completed his redirect of Dr. Chambers. Mother then called her expert, Dr. Bliss, as a rebuttal witness to Dr. Chambers before Father concluded his case by calling a neighbor of the marital home who testified that she had never detected anything problematic in the interactions between Father, Mother, and Child.

After the third day of trial, as a result of the fact that Mother had not yet begun to present her case-in-chief aside from the brief testimony of three witnesses out of order, the trial court scheduled a fourth day of trial on March 27, 2023. The court also entered an interim custody order expanding Father's

custody of Child to Fridays after school to Sunday evening and on Wednesdays after school to 7:00 p.m.

The fourth day of trial, the only day exclusively set aside for Mother to present her case, was taken up entirely by Mother's own testimony. During Mother's testimony, the trial court stated that there was a "time crunch" and trial needed to end early to allow the court to handle an emergency motion in another matter; the court set firm deadlines during the day for the conclusion of Mother's direct, cross-examination, and redirect testimony. N.T., 3/27/23, at 102-03, 119-20, 160, 170, 224-25, 241. When Mother's counsel requested to call two additional witnesses, Ms. Windak and Ms. Green, following Mother's testimony, the trial court recognized that Mother had not been able to call an equal number of witnesses as Father but informed Mother that her case was "done" and that "trial is over." *Id.* at 269-71.

In its May 15, 2023 order, the trial court granted Father's custody claim and awarded Father shared legal and physical custody of Child. Order, 5/15/23. The trial court issued an accompanying opinion in which it thoroughly addressed the sixteen custody factors set forth in Section 5328(a) of the Child Custody Act, 23 Pa.C.S. § 5328(a). As relevant here, the court found that factor 2 concerning the present or past abuse perpetrated by a party was neutral. 23 Pa.C.S. § 5328(a)(2) ("The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.").

The court recited the various allegations of abuse in the PFA and ICC proceedings, the testimony as to the alleged abuse by Mother and Father, and the testimony by Mother's two therapists as to the fact that she may have PTSD from the abuse. Trial Court Opinion, 5/15/23, at 18-20. The court then concluded that it "cannot ascertain whether the abuse alleged by Mother actually occurred." *Id.* at 21. The court stated that it did not find Mother's allegations of abuse persuasive due to the "inconsistencies and exaggerations in Mother's testimony, as well as the credibility in Father's testimony." *Id.* at 20. The court additionally noted that "very little testimony was directed to the impact [the abuse] had on Child." *Id.* at 21. This timely appeal followed.[3]

Mother presents the following issues on appeal:

1. Whether the trial court's preclusion of two of Mother's key factual witnesses called to testify about Father's abuse—in a case where the effect of the abuse on the parties' child was fundamental to the trial court's ultimate decision to award joint custody—was erroneous and an abuse of discretion requiring reversal of the custody order and a new trial?

2. Whether the trial court's decision to exclude Mother's expert in child psychology, in circumstances where she was fully qualified, her testimony was well-founded, and would have been relevant and probative to, among other things, the effects of domestic violence on children, and where the issue of abuse was fundamental to the trial court's decision to award joint custody, was erroneous and an abuse of discretion, requiring reversal of the custody order and a new trial?

---

[3] Mother filed a concise statement of errors with her notice of appeal as required by Pa.R.A.P. 1925(a)(2)(i), and the trial court issued a Pa.R.A.P. 1925(a) opinion on August 4, 2023.

3. Whether the trial court's decision to allow Father the unfettered ability to present his case each day of trial in the four-day custody trial, while restricting Mother to less than one full day to present her case, constituted an abuse of discretion that denied Mother a full and fair hearing, requiring reversal of the custody order and a new trial?

4. Whether the trial court's decision to allow Father, over Mother's objections, to introduce an unauthenticated and incomplete video of a custody exchange of the parties' child, which Father used to impugn Mother's credibility, constituted an abuse of discretion that caused Mother severe prejudice requiring reversal of the custody order and a new trial?

Mother's Brief at 5-6 (suggested answers omitted).

Our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Graves v. Graves*, 265 A.3d 688, 693 (Pa. Super. 2021) (citation omitted).

The paramount concern in any child custody case is the best interests of the child. 23 Pa.C.S. §§ 5328(a), 5338(a); *D.K. v. S.P.K.*, 102 A.3d 467, 474 (Pa. Super. 2014). "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." *D.K.D. v.*

***A.L.C.***, 141 A.3d 566, 572 (Pa. Super. 2016) (citation omitted). When awarding any form of custody, the trial court must set forth its consideration of each of the sixteen Section 5328(a) custody factors on the record or in a written opinion or order. 23 Pa.C.S. §§ 5323(d), 5328(a); ***Graves***, 265 A.3d at 694, 700; ***S.W.D. v. S.A.R.***, 96 A.3d 396, 402-03 (Pa. Super. 2014); ***J.R.M. v. J.E.A.***, 33 A.3d 647, 652 (Pa. Super. 2011). The trial court must give "weighted consideration" to any custody factor "which affect[s] the safety of the child." 23 Pa.C.S. § 5328(a); ***see also M.J.M. v. M.L.G.***, 63 A.3d 331, 338 (Pa. Super. 2013).

Questions concerning the admissibility of evidence, including expert testimony, as well as the court's overall management of the presentation of evidence at trial, are within the sound discretion of the trial court and should not be overturned absent an abuse of discretion. ***Commonwealth v. Purnell***, 259 A.3d 974, 984 (Pa. 2021); ***Calisto v. Rodgers***, 271 A.3d 877, 884 (Pa. Super. 2022) (*en banc*); ***Nobles v. Staples, Inc.***, 150 A.3d 110, 113 (Pa. Super. 2016). An abuse of discretion is not merely an error of judgment but will only be found when the trial court makes a manifestly unreasonable, arbitrary, or capricious decision, fails to apply the law, or allows prejudice, bias, or ill will to influence its decision. ***Calisto***, 271 A.3d at 884-85; ***Gregury v. Greguras***, 196 A.3d 619, 633 (Pa. Super. 2018) (*en banc*). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." ***Calisto***, 271 A.3d at 884 (citation omitted); ***see also Gregury***, 196 A.3d at 633.

We initially address Mother's first and third issues together, as they are related. In her first issue, Mother argues that the trial court abused its discretion by preventing her from calling two witnesses who would have testified as to Father's abuse of her, Mother's mother, Ms. Windak, and a neighbor, Ms. Green. Mother asserts that the trial court's reasoning as stated in its Rule 1925(a) opinion—that these two witnesses would have been cumulative of the testimony of her two therapists, the testifying experts, and Mother's own testimony regarding abuse—contradicts the basis stated by the court when Mother attempted to call the witnesses that Mother had simply run out of time to present any more evidence. Trial Court Opinion, 8/4/23, at 18-19; N.T., 3/27/23, at 269-71 (upon Mother's request to call two additional witnesses, trial court stating "I gave you an extra day. You are done. The trial is over."). Mother contends that both of the court's rationales are flawed as Mother was given insufficient time relative to Father and hampered from presenting her case in the time that was allotted to her and further that the two witnesses would not have been cumulative as no other non-party witnesses testified that the abuse occurred. Mother maintains that the refusal to allow her to call the two witnesses was troubling in light of the lower court's decision that it "cannot ascertain whether the abuse alleged by Mother actually occurred." Trial Court Opinion, 5/15/23, at 21. According to Mother, "[h]ad the trial court allowed all the evidence of abuse[,] the trial court's custody decision should have, and likely would have, gone differently." Mother's Brief at 21.

In her third issue, Mother asserts that the trial court abused its discretion by not providing her sufficient time to present her case compared to the time allotted to Father. Mother notes the requirement in our caselaw that "[c]ustody hearings should be comprehensive [and] all witnesses who can contribute should be heard" and that the court must "ensure that as full and complete a record as possible is created when a decision as important as the welfare of a child is at issue." *Moore v. Moore*, 634 A.2d 163, 167 (Pa. 1993); *Bednarek v. Velazquez*, 830 A.2d 1267, 1270 (Pa. Super. 2003); *see also Tettis v. Boyum*, 436 A.2d 1056, 1064 (Pa. Super. 1983). While Mother admits that the trial court was not required to give the parties exact equal time when presenting their cases, she highlights the significant disparity here where the trial court provided her only one full day to present her case to Father's three and then rushed her to complete her case on her designated day.

Upon a careful review of the record, we agree with Mother that the trial court abused its discretion by not allowing her to present two additional witnesses to testify as to the alleged abuse that Father perpetrated on Mother. While Mother was allowed to call three witnesses out of order on the first three days of trial, our review of the transcript reveals that the testimony of these three witnesses was comparatively brief and Father was allotted far more time overall for his witnesses. Indeed, evidence of this disbalance can be seen based upon the fact that Father was permitted to call a neighbor to testify that she saw "nothing over the edge" during the parties' interactions and she was

"shocked" when she found out that Mother had filed a PFA, N.T., 2/9/23, at 196-98, yet Mother was not allowed to call another neighbor who would have provided a different account of the alleged abuse. While this Court is normally, and with good reason, reticent to interfere in the trial court's handling of a trial, we find it necessary to do so here so that the lower court may issue its ruling affecting the welfare of Child on as full and complete of a record as possible. *Moore*, 634 A.2d at 167; *Bednarek*, 830 A.2d at 1270; *Tettis*, 436 A.2d at 1064. Moreover, we highlight that the trial court is required to give "weighted consideration" to any custody factor that "affect[s] the safety of the child," 23 Pa.C.S. § 5328(a); *see also M.J.M.*, 63 A.3d at 338, and the question of whether Father committed past abuse towards Mother potentially affects Child's ongoing safety.

We do not, however, agree with Mother's broader challenge to the trial court's allotment of time at trial, and we do not accede to Mother's request that we remand for an entire new trial with parity of time allocated to the parties. While Mother complains that the trial court "interrupted" her counsel numerous times during the course of trial and otherwise prevented her from efficiently conducting examination of the relevant witnesses, *id.* at 35-38, we agree with the trial court's explanation that it was simply "caution[ing]" Mother's counsel at various points during trial "to be judicious" with her examination of witnesses on specific incidents and issues and advising counsel not to overly focus on Father's alleged abuse of Mother at the expense of other matters bearing on Child's best interests. Trial Court Opinion, 8/4/23, at 20;

*see, e.g.,* N.T., 2/2/23, at 85, 187-91; N.T., 2/9/23, at 225-28; N.T., 3/27/23, at 17-18, 88-91. The trial court appropriately exercised its authority in managing the parties' presentation of evidence to prevent time wasting and to protect the truth-determining purpose of trial, specifically as to the sixteen custody factors that the trial court was required to consider in its custody ruling. Pa.R.E. 611(a) (trial court shall "exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to," *inter alia,* "make those procedures effective for determining the truth" and "avoid wasting time"); *Purnell*, 259 A.3d at 985; *see also Graves*, 265 A.3d at 700 (trial court is required to set forth its consideration of all custody factors with its custody order).

We next turn to Mother's second issue challenging the trial court's grant of Father's motion *in limine* excluding Mother's proposed expert witness on the effect of domestic violence on children, Dr. Champion. Mother notes the court's inconsistent explanations for the expert's preclusion, first ruling in its order granting the motion *in limine* that the expert was not competent to testify while reasoning in its Rule 1925(a) opinion that Dr. Champion had no relevant expertise to offer where she had not met with Child or the parties and further that her testimony would have been cumulative of the other two experts, Dr. Chambers and Dr. Bliss. Order, 1/31/23; Trial Court Opinion, 8/4/23, at 17-18. Mother contends that each of these rationales are unfounded: Father did not mount a challenge to Dr. Champion's qualifications in the motion *in limine* and in any event Dr. Champion was amply qualified;

an expert is not required to have personally interacted with the parties to offer an opinion; and Dr. Champion's testimony would not have been cumulative of the other two experts as her testimony would have been offered from a different clinical perspective focusing narrowly on the effect of parental abuse on children.

Based upon our review of the record, we agree with Mother that the trial court's grounds for excluding Dr. Champion are either legally incorrect or unsupported by the record. With respect to the trial court's initial grant of the motion *in limine* based upon Dr. Champion's lack of "competen[cy] to proffer her expert opinion in this custody matter," Order, 1/31/23, at 1, we note that Father's motion *in limine* and supporting memorandum was not filed of record and does not appear in the certified record. However, based upon our review of the trial court's scheduling order for the motion *in limine*, Mother's response thereto, and Mother's later motion for reconsideration, it appears that Father did not challenge Dr. Champion's competency in his motion. Order, 1/27/23, at 1 (noting that Father indicated intent to file motion *in limine* challenge whether Mother could offer two "opposing experts" at trial); Mother's Memorandum of Law and Response to Motion *In Limine*, 1/30/23, at 2-3 (unnumbered) (arguing that Dr. Champion and Dr. Bliss would not offer conflicting opinions but instead the experts would corroborate one another); Mother's Motion for Reconsideration, dated 3/20/23 and filed 4/20/23, ¶4 (asserting that the crux of Father's argument was that Dr. Champion's testimony should be excluded because she had not engaged with the parties

in any way and could not offer an opinion as to this specific case and because her testimony would be cumulative and unnecessary). Furthermore, it does not appear that the trial court reviewed Dr. Champion's curriculum vitae or otherwise considered her "knowledge, skill, experience, training, or education" before excluding Dr. Champion on competency grounds. Pa.R.E. 702.

To the extent the trial court justified the exclusion of Dr. Champion in its Rule 1925(a) opinion on the fact that Dr. Champion "had never met with the parties" and would only offer "general expert" testimony, Trial Court Opinion, 8/4/23, at 17, this ruling contradicts our rules of evidence which provide that an expert need not base their opinion on personal knowledge. *See* Pa.R.E. 703 ("An expert may base an opinion on **facts** or data in the case **that the expert has been made aware** of or personally observed.") (emphasis added); Pa.R.E. 602 & Comment (stating that personal knowledge requirement of lay witnesses set forth in Rule 602 does not apply to an expert who may "base an opinion on facts not within the expert's personal knowledge"). Therefore, the mere fact that Dr. Champion did not meet with the parties or Child could not serve as the basis for her exclusion.

Finally, we find no support for the trial court's ruling that Dr. Champion's opinion would have been cumulative of that of Dr. Bliss. Trial Court Opinion, 8/4/23, at 17-18. Dr. Bliss was offered as a rebuttal expert to Dr. Chambers, who performed a court-ordered custody evaluation and recommended that Father be given shared physical custody of Child. N.T., 2/1/23, at 75, 117. Dr. Bliss's testimony focused on the role of a custody evaluator and several

deficiencies she noted in the custody evaluation report authored by Dr. Chambers. N.T., 2/9/23, at 132-33. While Dr. Bliss's testimony touched upon Dr. Chambers' consideration of Father's alleged domestic abuse in rendering the recommendation, *id.* at 152-54, Dr. Champion was not offered to rebut Dr. Chambers, but instead she would have educated the court, from her perspective as a clinician and researcher, on the current scientific understanding the effect witnessing interpersonal violence has on a child throughout her life. Mother's Memorandum of Law and Response to Motion *In Limine*, 1/30/23, at 2; Mother's Motion for Reconsideration, dated 3/20/23 and filed 4/20/23, ¶¶11, 14-15. The trial court itself recognized that Child's perspective on this issue was not sufficiently addressed at trial, highlighting in its opinion that "very little testimony was directed to the impact [the abuse] had on Child." Trial Court Opinion, 5/15/23, at 21. We have recognized that expert testimony with such distinctly focused perspectives as that of Dr. Bliss and Dr. Champion should not be barred as cumulative, even where the experts are presented by the same party and practitioners in the same field. **See Hassel v. Franzi**, 207 A.3d 939, 953-54 (Pa. Super. 2019) (testimony from two medical experts who "approached the standard of care from different clinical perspectives" was corroborative, not cumulative).

Nevertheless, on the record presently before us, the trial court's decision to exclude Dr. Champion constitutes harmless error for the reason that the court found that insufficient evidence had been presented to show that abuse occurred; therefore, Dr. Champion's general testimony as to the effect of

abuse on children could not have swayed the lower court's custody determination. Trial Court Opinion, 5/15/23, at 20-21; *Calisto*, 271 A.3d at 884 ("To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.") (citation omitted); *see also Gregury*, 196 A.3d at 633. The court's conclusion that Mother had not proved abuse occurred fell squarely within the trial court's authority as the arbiter of the evidence. *Graves*, 265 A.3d at 693. However, in light of our decision to remand this matter to allow Mother to present two additional witnesses on the question of abuse, *see supra*, we must also reopen the decision to allow the trial court to consider Dr. Champion's testimony as to the effects of abuse on Child. Accordingly, on remand, if the trial court determines that abuse occurred after considering Mother's new evidence, then the court should also permit Mother to call Dr. Champion to testify on the effect of that abuse on Child.

In her final issue, Mother argues that the trial court improperly admitted an unauthenticated and incomplete video recording of a custody exchange that Father admitted during cross-examination of Mother. Mother contends that no steps were taken to authenticate the video under the applicable evidentiary rule. Mother emphasizes her prejudice from the admission of this evidence as the trial court cited this specific incident as evidence of "inconsistencies and exaggerations" in Mother's account of Father's alleged abusive conduct directed toward her. Trial Court Opinion, 5/15/23, at 20-21.

As stated above, during cross-examination of Mother, Father's counsel sought to introduce a video recording of a September 9, 2022 custody exchange that was recorded by Father's mother; Mother had previously testified that Father approached her with fists clenched and red-faced during this exchange. N.T., 3/27/23, at 257-59, 263. Mother's counsel initially only objected to the admission of the video's sound pursuant to the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. §§ 5701-5782, which objection the trial court overruled. N.T., 3/27/23, at 260-61. After the video was played and Mother was examined regarding its contents, Father's counsel sought to enter the zip drive containing the video as an exhibit. *Id.* at 265-66. At that point, the trial court asked Father whether the video "accurately depict[ed] what occurred," and Father responded in the affirmative. *Id.* at 266. Mother's counsel then noted her objection to the admission of the recording on the basis that paternal grandmother, the person who recorded the video, "isn't here to authenticate taking the video and it does not accurately depict the entire exchange . . ." *Id.* The trial court overruled the objection. *Id.* at 267.

We find no merit to Mother's claim. Authentication generally entails a "low burden of proof," requiring only that the proponent "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a); **Commonwealth v. Jackson**, 283 A.3d 814, 818 (Pa. Super. 2022). The author or individual who created the evidentiary item need not testify for the item's authentication, but instead evidence may be

authenticated by testimony from a witness who has knowledge "that an item is what it is claimed to be." Pa.R.E. 901(b)(1); *see also Commonwealth v. Serge*, 896 A.2d 1170, 1177 (Pa. 2006); *Gregury*, 196 A.3d at 633-34; *Zuk v. Zuk*, 55 A.3d 102, 112 (Pa. Super. 2012). Furthermore, "[d]emonstrative evidence such as photographs, motion pictures, diagrams and models must be authenticated by evidence sufficient to support a finding that the demonstrative evidence fairly and accurately represents that which it purports to depict." Pa.R.E. 901, Comment; *see also Serge*, 896 A.2d at 1177.

Here, the authentication requirement was satisfied when Father testified that the video recording accurately depicted what occurred during the September 9, 2022 custody exchange. *See* N.T., 3/27/23, at 266 ("THE COURT: . . . So does [the video recording] accurately depict what occurred? [FATHER]: Yes."); Pa.R.E. 901, Comment; *Serge*, 896 A.2d at 1177. Father was not required to present the testimony of paternal grandmother to testify as to her recording of the video as he was present at the captured incident and had knowledge that the video is what it was claimed to be. Pa.R.E. 901(b)(1); *Serge*, 896 A.2d at 1177; *Gregury*, 196 A.3d at 633-34. Therefore, Mother is not entitled to relief on her final issue.

Based upon our conclusions outlined above, we remand for the trial court to conduct an additional proceeding at which Mother may present testimony from two additional fact witnesses, Ms. Windak and Ms. Green, on the subject of Father's alleged abuse of Mother. If, after consideration of this new evidence as well as the evidence previously received, the trial court finds

that any abuse actually occurred, it shall also permit Dr. Champion to offer expert testimony regarding the effect of domestic violence on children. The trial court may also receive any other evidence at this further proceeding that it deems relevant to Child's best interests. Following its receipt of this additional evidence, the trial court shall issue a new final custody order based upon its consideration of the Section 5328(a) factors.[4]

Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

12/29/2023

---

[4] The trial court's May 15, 2023 custody order shall remain in effect pending further ruling by the lower court.